DAVID A. HUBBERT
Acting Assistant Attorney General

JEREMY N. HENDON
CHARLES J. BUTLER
MATTHEW P. UHALDE
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 683, Ben Franklin Station
Washington, D.C. 20044
202-353-2466 (v)
202-307-0054 (f)
Jeremy.Hendon@usdoj.gov
Charles.J.Butler@usdoj.gov
Matthew.P.Uhalde@usdoj.gov

ANTHONY MARTIN
Acting United States Attorney
*Of Counsel*

*Attorneys for the United States of America*

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Stephen M. Kerr,<br><br>Defendant. | Case No. 3:19-cv-05432-DJH<br><br>**United States' Motion for Summary Judgment** |

United States' Motion for
Summary Judgment
(Case No. 2:19-cv-05432-DJH)

**U.S. DEPARTMENT OF USTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-353-2466

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

STATEMENT OF UNDISPUTED FACTS ........................................................ 3

LEGAL STANDARD FOR WILLFUL FAILURE TO FILE FBARs .............................. 7

ARGUMENT .................................................................................................... 9

1.    Because this Court previously ruled that Kerr willfully failed to file FBARs with respect to four of the five Swiss accounts at issue, the United States is entitled to summary judgment regarding those accounts and this Court's inquiry into those accounts is limited to the penalty amounts .............................................. 9

2.    Because Kerr willfully failed to file an FBAR for 2007 with respect to the Placeholder Account, he is liable for a willful FBAR penalty pertaining to the account for that year. ..................................................................................... 9

      a.    Kerr has admitted two of the four elements regarding the Placeholder Account and another element cannot be contested. ...................................... 9

      b.    The last element is met as Kerr had the requisite financial interest in, or authority over, the Placeholder Account. ...................................... 10

3.    The Court should uphold the penalty assessed by the IRS in the reduced total amount for 2007 and 2008 of $2,225,574. ............................................. 12

CONCLUSION ............................................................................................. 17

United States' Motion for
Summary Judgment
(Case No. 2:19-cv-05432-DJH)

**U.S. DEPARTMENT OF USTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-353-2466

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bedrosian v. United States*,
   912 F.3d 144 (3d Cir. 2018) ............................................................................. 7

*United States v. Bussell*,
   2015 WL 9957826 (C.D. Cal. Dec. 8, 2015), *aff'd*, 699 Fed. Appx. 695
   (9th Cir. 2017) ............................................................................................... 16

*Earth Island Inst. v. U.S. Forest Serv.*,
   697 F.3d 1010 (9th Cir. 2012) ...................................................................... 15

*Fla. Power & Light Co. v. Lorion*,
   470 U.S. 729 (1985) ...................................................................................... 16

*United States v. Gentges*,
   No. 2021 WL 1222764 (S.D.N.Y. Mar. 31, 2021) ......................................... 8

*Jones v. United States*,
   2020 WL 2803353 (C.D. Cal. May 11, 2020) ................................................ 8

*Kimble v. United States*,
   991 F.3d 1238 (Fed. Cir. 2021) ...................................................................... 8

*United States v. McBride*,
   908 F. Supp. 2d 1186 (D. Utah 2012) ............................................................ 8

*Norman v. United States*,
   942 F.3d 1111 (Fed. Cir. 2019) ................................................................... 7, 8

*United States v. Pomerantz*,
   2017 WL 2483213 (W.D. Wash. June 8, 2017) ........................................... 7, 8

*United States v. Schwarzbaum*,
   2020 WL 1316232 (S.D. Fla. Mar. 20, 2020) ................................................ 8

*United States v. Schwarzbaum*,
   2020 WL 2526500 (S.D. Fla. May 18, 2020) ............................................... 16

*United States v. Toth*,
   2017 WL 1703936 (D. Mass. May 2, 2017) .................................................. 7

*United States v. Williams*,
   489 F. App'x 655 (4th Cir. 2012) ................................................................... 1

**Statutes**

5 U.S.C. § 706(2)(A) ......................................................................................... 8
31 U.S.C. § 3717(e)(1) and (2) ........................................................................ 17
31 U.S.C. § 3717(e)(2) ..................................................................................... 16
31 U.S.C. § 5314 ............................................................................................ 6, 7
31 U.S.C. § 5321(a)(5) ................................................................................... 7, 9
31 U.S.C. § 5321(a)(5)(A)-(D) ......................................................................... 8
31 U.S.C. § 5321(a)(5)(C)(i) ....................................................................... 12, 13
31 U.S.C. § 5322(a) ........................................................................................... 6

United States' Motion for
Summary Judgment
(Case No. 2:19-cv-05432-DJH)

**U.S. DEPARTMENT OF USTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-353-2466

ii

1

**Regulations**

31 C.F.R. § 1010.306(d) ........................................................................................ 1
31 C.F.R. § 1010.306(c) and (d) ........................................................................... 6
31 C.F.R. § 1010.350 ............................................................................................ 6
31 C.F.R. § 1010.350(e)(1) and (2) ..................................................................... 10
31 C.F.R. § 1010.350(e)(3) ................................................................................. 10
31 U.S.C. § 1010.350(f)(1) ................................................................................. 10

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States' Motion for
Summary Judgment
(Case No. 2:19-cv-05432-DJH)

**U.S. DEPARTMENT OF USTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-353-2466

United States persons holding over $10,000 USD in foreign accounts during the calendar year must disclose that fact to the Treasury Department. To make this disclosure, one must annually file a Report of Foreign Bank Accounts ("FBAR")[1] form. Willfully failing to do so can result in both civil and criminal penalties, as happened with Defendant Stephen Kerr.

In 2013, a federal jury convicted Kerr of willfully failing to file FBARs for 2007 and 2008 regarding four foreign bank accounts in Switzerland: three accounts at Union Bank of Switzerland AG ("UBS") and one account at Pictet & Cie ("Pictet"). Following Kerr's criminal conviction, the IRS assessed civil willful FBAR penalties for the same accounts and years. The IRS's civil willful FBAR penalty for 2007 also included an account at UBS in Switzerland, account number ending 734 (the "Placeholder Account"), that was opened so that Kerr's nominee Swiss corporation, Red Rock Investment AG ("Red Rock"), could be formed under Swiss law and other Swiss bank accounts could be opened in Red Rock's name.

Because Kerr refused to pay the penalties, the United States filed this lawsuit to reduce them to judgment. Earlier in this case, the United States moved for partial summary judgment on the issue of liability based on preclusion—*i.e.*, whether Kerr willfully failed to file an FBAR disclosing an interest in the five Swiss accounts. The Court granted that motion, under the collateral estoppel doctrine, as to the four accounts specifically identified in the Indictment, and covered by Counts 6 and 7, in Kerr's prior criminal FBAR case and for which he was criminally convicted for failing to report. This second motion picks up where the Court's prior ruling left off.[2]

---

[1] An FBAR is an information report that (for the relevant calendar years) must be filed no later than June 30 of the year following the calendar year during which the account was held. 31 C.F.R. § 1010.306(d); *United States v. Williams*, 489 F. App'x 655 (4th Cir. 2012).

[2] The Court previously granted the United States leave to file a second motion for summary judgment. (Order, ECF No. 18.)

United States' Motion for
Summary Judgment
(Case No. 2:19-cv-05432-DJH)

**U.S. DEPARTMENT OF USTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-353-2466

1

Two issues remain in this case. First, is Kerr liable for willfully failing to file an FBAR for 2007 reporting the Placeholder Account? Second, were the amount of the penalties that the IRS assessed for 2007 and 2008 for all five accounts a proper exercise of agency discretion? The United States moves for summary judgment on both.

Concerning the first issue, Kerr has admitted several of the elements that the United States must prove to establish liability regarding the Placeholder Account for 2007: specifically, that he is a United States person and that, if he was required to file an FBAR to report the Placeholder Account for 2007, then his failure to do so was willful. Thus, for purposes of the Placeholder Account, the United States must show that (1) Kerr had a financial interest in, or authority over, the Placeholder Account, (2) the Placeholder Account was a financial account in a foreign country, and (3) the aggregate balance in the Placeholder Account and all foreign accounts in which Kerr had a financial interest, or authority over, during 2007 totaled at least $10,000 USD at some point in 2007. There are no disputes of material fact that bear on these questions. Thus, the United States is entitled to summary judgment that Kerr willfully failed to file the 2007 FBAR reporting the Placeholder Account.

With respect to the second issue, the IRS first exercised its discretion and determined that no mitigation applied. The IRS then decided to assess the statutory maximum amount for willful penalties for 2007 and 2008 except that for 2007, the IRS decided that the portion attributable to the Placeholder Account should only be $40,985 rather than the statutory maximum of $100,000. The IRS thus assessed a total penalty for 2007 and 2008 of $3,800,970. Under the Administrative Procedure Act, the Court must give deference to this determination, except on one point. As the United States concedes, the IRS overestimated the statutory maximum penalty from the evidence available to it by $1,575,396. Consequently, the United States asks the Court to enter judgment in the reduced amount of $2,225,574, plus statutory interest and statutory accruals.

United States' Motion for
Summary Judgment
(Case No. 2:19-cv-05432-DJH)

**U.S. DEPARTMENT OF USTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-353-2466

2

1

### STATEMENT OF UNDISPUTED FACTS

2         Kerr is a United States citizen who obtained a bachelor's degree from the

3   University of Colorado. (Exs. 1 and 2 at ¶ 13; Ex. 5 at 12.) Kerr owned and operated a

4   number of businesses including CCN Worldwide, Inc., a venture capital firm that

5   provided financial capital to start-up companies, and also provided services for

6   businesses seeking to become publicly-traded corporations through the use of mergers

7   and acquisitions. (Exs. 1 and 2 at ¶ 14; Ex. 5 at 18-31; 36-37.) Between 2004 and at least

8   2007, Kerr and his business partner, Michael Quiel, obtained control of numerous shares

9   of domestic corporations they had assisted in going public. (Exs. 1 and 2 at ¶ 15; Ex. 5 at

10   38-39; 127.) They would also use an entity or corporation to raise money and invest in,

11   which they would then take public. (Ex. 9 at 1638-39.)[3] Kerr and Quiel would loan

12   money to these companies and receive shares of the companies' stock in return. They

13   would also find investors in these companies and would receive commissions typically in

14   the form of stock in these companies in exchange for doing so. (*Id*. at 1648.)

15         Quiel had a prior audit with the IRS concerning his use of an offshore credit card

16   and bank account in Belize and hired an attorney by the name of Christopher Rusch to

17   represent him before the IRS. (*Id*. at 1613-14.) Quiel's IRS audit concluded in May 2006.

18   (*Id*. at 1626.) Thereafter, Quiel asked Rusch to investigate the possibility of forming

19   active companies and setting up operations in Switzerland to bring in foreign investors or

20   foreign funds into his and his business partner Kerr's businesses. (*Id*. at 1630-31, 2189-

21   90, 2193, 2504-05.)

22         Between the Summer and Fall of 2006, Rusch provided information about possible

23   structures and companies that could be set up in Switzerland for Kerr and Quiel to

24   conduct business, as well as information regarding ownership and reporting obligations

25   pertaining to these yet-to-be-created Swiss entities to the United States authorities. (*Id*. at

26

---

[3] Citations to testimony in Kerr's prior criminal FBAR case are to the transcript page numbers and not the ECF filing page numbers.

27

28

1630-48, 1658-70; Exs. 11-23.) In mid-September 2006, Rusch sent representation agreements to Kerr and Quiel in order for them to officially hire Rusch to form the Swiss companies for them that they all had been discussing. (Ex. 9 at 1643-47; Ex. 14.) Although a signed copy of the representation agreement for Kerr was not admitted in Kerr's criminal trial, an unsigned one was admitted along with unrefuted testimony by Rusch that Kerr had signed it. (Ex. 9 at 1647-48; Ex. 15.) The purpose of Kerr's representation agreement was for Rusch to form Red Rock, a Swiss corporation, on Kerr's behalf. (Ex. 9 at 1647-48.) On September 27, 2006, Rusch asked Kerr to provide him with a suggested name for Kerr's Swiss corporation that he was forming. (Ex. 17.)

In October 2006, Rusch traveled to Switzerland to set up the Swiss structures for Kerr and Quiel. (Ex. 5 at 163-64; Exs. 18-20.) On October 12, 2006, Rusch informed them by email of his progress setting up their Swiss corporations (Ex. 20; Ex. 9 at 1658-71.) As part of that email, Rusch informed them that their Swiss companies had to be approved by the Swiss authority or registrar and that, in order to make that happen, Rusch would first have to open restricted accounts at UBS in Switzerland in the names of the Swiss companies that they provided—*i.e.*, Red Rock for Kerr—and that they needed to wire the required corporate capital amount in Swiss francs into the UBS account so that UBS could then report to the Swiss registrar that the funds have arrived. (Ex. 20.) Rusch further informed them that at that point, the Swiss corporations would be finalized and the Swiss registrar would communicate that to UBS so that UBS would lift the restriction on the bank account. (Ex. 20; Ex. 9 at 1700-01.)

On October 23, 2006, Rusch followed up with them and informed them that he believed that the initial UBS account would be opened within a few days and that they would then need to wire the corporate capital of 100,000 CHF (Swiss francs) into the UBS accounts in the name of their respective Swiss corporations—again, Red Rock for Kerr—and that once the incorporation of the Swiss corporations was completed, Rusch

United States' Motion for
Summary Judgment
(Case No. 2:19-cv-05432-DJH)

**U.S. DEPARTMENT OF USTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-353-2466

4

1   would open their respective "personal" accounts at Pictet. (Ex. 21.) The next day,

2   October 24, 2006, Rusch emailed Kerr to inform him that his UBS corporate account for

3   Red Rock had been opened, in addition to asking Kerr to wire 100,000 CHF into that

4   account to complete the incorporation of Kerr's Swiss corporation Red Rock. (Ex. 22.)

5   He further provided the account details for the UBS account that was in the name of Red

6   Rock with account number ending 734. (*Id*.)

7          During Kerr's prior criminal trial, Martin Peter, a UBS representative from Zurich,

8   Switzerland, testified to authenticate and provide the necessary business records

9   foundation for admission into evidence of Kerr's UBS bank records. (Ex. 10 at 732-35,

10  752-61; 787-88.) Peter also testified that the Placeholder Account was a "capital deposit

11  account" opened in October 2006. (*Id*. at 787-88, 818-19.) Peter testified that according

12  to Swiss law at the time, one had to deposit 100,000 Swiss francs with UBS in order to

13  register a company with UBS and that then allowed the company to temporarily open a

14  capital deposit account. (*Id*. at 787-88; Ex. 9 at 1681.) Peter further testified that Crim.

15  Ex. 246 (here, Ex. 28) included the UBS bank records for Red Rock's capital deposit

16  account, account number ending 734. (Ex. 10 at 787-88.)

17         Kerr's Red Rock Swiss corporation was officially formed and incorporated. (Ex. 5

18  at 197; Ex. 9 at 1671.) A capital deposit account for Red Rock was opened at UBS, *i.e.*

19  the Placeholder Account, and given account number ending 734. (Ex. 28; Ex. 10 at 787-

20  88; Exs. 21-22.) Further, 100,000 CHF were wired into the Placeholder Account. (Ex. 28

21  at 3226_01_0005b and 3226_01_0034; Ex. 9 at 2519.) Subsequently, the UBS account

22  number ending 962 ("962 account") and an account at Pictet, account number ending 531

23  ("Pictet account"), were opened in the name of Red Rock. (Exs. 27 and 29.) Peter

24  testified that after Red Rock opened its capital deposit account (*i.e.* the Placeholder

25  Account) in 2006, other accounts in the name of Red Rock could be opened at UBS (Ex.

26  10 at 788, 818-19.) Thus, the 962 account was allowed to be opened only because Red

27
28  United States' Motion for
    Summary Judgment
    (Case No. 2:19-cv-05432-DJH)

Rock had previously opened a capital deposit account. (Ex. 10 at 818-19.) Kerr was the beneficial owner of the 962 account and the Pictet account. (Ex. 27 at 22260003; Ex. 29 at PICTET-01-00006.) These are two of the four accounts for which Kerr was criminally convicted for willfully not filing an FBAR with the IRS to report them. (Exs. 7-8.) Further, Kerr traveled to Switzerland several times to meet with representatives of UBS and Pictet, as well as Dr. Arno Arndt who assisted Rusch in incorporating Red Rock. (Ex. 5 at 168-69, 203, 209; Ex. 10 at 789; Exs. 24-25.)

As mentioned, in 2007, a separate account at UBS was opened in the name of Red Rock and was given account number ending 962. (Ex. 27 at 2226_0178a.) In February 2007, the 99,700 CHF that were held in the Placeholder Account were directly transferred to the 962 account. (*Id*. and Compare Ex. 27 at 2226_0248 with Ex. 28 at 3226_01_0031.)

In December 2011, an Indictment was filed in this Court charging Kerr with several criminal violations in case number CR 11-2385-PHX-JAT-DKD. (Ex. 7.) Relevant here, Counts 6 and 7 of the Indictment charged Kerr with Willful Failure to File FBARs pursuant to 31 U.S.C. §§ 5314, 5322(a) and 31 C.F.R. §§ 1010.350, 1010.306(c) and (d) with respect to undeclared accounts in Switzerland at UBS and Swiss Bank A in which Kerr had a financial interest for 2007 and 2008. (Ex. 7 at ¶¶ 89-90.) The undeclared accounts in Switzerland at UBS were identified in the Indictment as account numbers ending 962, 796, and 593. (Ex. 7 at ¶¶ 11-13.) "Swiss Bank A" refers to Pictet. The Indictment mentions "bank account number x-xxx531 at Swiss Bank A" and the criminal trial exhibit containing bank records for account number x-xxx531 are for an account at Pictet. (Compare Ex. 7 at ¶ 11 with Ex. 29.) After a criminal trial in the spring of 2013, a jury returned a guilty verdict against Kerr, among other charges, on Counts 6 and 7 of the Indictment. (Ex. 8.)

United States' Motion for
Summary Judgment
(Case No. 2:19-cv-05432-DJH)

**U.S. DEPARTMENT OF USTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-353-2466

6

1    On December 21, 2017, the IRS assessed civil willful FBAR penalties for 2007

2    and 2008, based on per account amounts, against Kerr in the amount of $3,800,970. (Ex.

3    6.) On March 1, 2021, this Court granted the United States' Motion for Partial Summary

4    Judgment ordering that Kerr is precluded from challenging that he willfully failed to file

5    FBARs for 2007 and 2008 "with respect to the accounts referenced in Counts 6 and 7 of

6    the prior criminal Indictment." (Ex. 4 at 3.)

7                    **LEGAL STANDARD FOR WILLFUL FAILURE TO FILE FBARs**

8    The Bank Secrecy Act of 1970 requires United States persons with foreign bank

9    accounts to maintain records and make reports "that may be useful in 'criminal, tax, or

10   regulatory investigations or proceedings, or in the conduct of intelligence or

11   counterintelligence activities ....'" *Bedrosian v. United States*, 912 F.3d 144, 147 (3d Cir.

12   2018) (quoting 31 U.S.C. § 5311). 31 U.S.C. § 5314 instructs the Secretary of the

13   Treasury to prescribe rules that require persons to file an annual report identifying certain

14   transactions or relations with foreign financial agencies. *Id.*; *Norman v. United States*,

15   942 F.3d 1111, 1114 (Fed. Cir. 2019). 31 C.F.R. § 1010.350, in turn, requires that certain

16   United States persons must annually file a Report with the IRS—namely those who have

17   a financial interest in, or signature or other authority over a bank, securities, or other

18   financial account(s) in a foreign country. The required report is made by filing an FBAR.

19   *Norman*, 942 F.3d at 1114. For the years at issue in this case (2007 and 2008), "[c]overed

20   persons must file it by June 30 each year for foreign accounts exceeding $10,000 in the

21   prior calendar year." *Bedrosian*, 912 F.3d at 147 (citing 31 C.F.R. § 1010.306(c)).

22   Thus, a person is liable for a willful failure to file an FBAR penalty under

23   § 5321(a)(5) if the following four elements are met: (1) the person is a United States

24   citizen; (2) the person had a financial interest in or signature or other authority over a

25   foreign financial account; (3) the financial account or accounts had an aggregate balance

26   that exceeded $10,000 at some point during the reporting period; and (4) the person

27
28

United States' Motion for
Summary Judgment
(Case No. 2:19-cv-05432-DJH)

**U.S. DEPARTMENT OF USTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-353-2466

7

1   willfully failed to disclose the account and file an FBAR form for the account. *United*
2   *States v. Pomerantz*, 2017 WL 2483213, at \*5 (W.D. Wash. June 8, 2017); *United States*
3   *v. Toth*, 2017 WL 1703936, at \*4 (D. Mass. May 2, 2017); *United States v. McBride*, 908
4   F. Supp. 2d 1186, 1201 (D. Utah 2012). In determining whether these elements are met,
5   the Court reviews the evidence *de novo*. *Jones v. United States*, 2020 WL 2803353, at \*5
6   (C.D. Cal. May 11, 2020); *Pomerantz*, 2017 WL 2483213, at \*4; *McBride*, 908 F. Supp.
7   2d at 1201.

8       When a person is liable for willfully failing to file FBARs, § 5321(a)(5)(A)
9   authorizes the Secretary of the Treasury to impose civil money penalties.  *Norman*, 942
10   F.3d at 1114. In 2004, Congress amended § 5321 to authorize penalties up to $10,000 for
11   non-willful violations of § 5321 and to increase the maximum penalty for willful
12   violations to the greater of $100,000 or fifty percent of "the balance in the account at the
13   time of the violation." 31 U.S.C. § 5321(a)(5)(A)-(D). The balance in the account at the
14   time of the violation is the balance at the end of the day on the deadline to file an FBAR
15   for the year in question. *United States v. Gentges*, No. 2021 WL 1222764, at \*16
16   (S.D.N.Y. Mar. 31, 2021); *Jones*, 2020 WL 2803353, at \*8; *United States v.*
17   *Schwarzbaum*, 2020 WL 1316232, at \*13 (S.D. Fla. Mar. 20, 2020); Internal Revenue
18   Manual ("IRM") § 4.26.16.6. For the two years at issue here—2007 and 2008—that
19   means the balance of the account on June 30 of the following year (*i.e.*, June 30, 2008
20   and June 30, 2009, respectively).

21       Unlike liability, the Court does not review the penalty amount *de novo.* Instead,
22   the Court gives deference, in accordance with the Administrative Procedure Act, to the
23   penalty amount chosen by the IRS. *Kimble v. United States*, 991 F.3d 1238, 1243 (Fed.
24   Cir. 2021); *Jones*, 2020 WL 2803353, at \*8. Under this standard, the Court upholds the
25   amount chosen by the IRS unless it was "arbitrary, capricious, an abuse of discretion, or
26   otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

27
28

United States' Motion for
Summary Judgment
(Case No. 2:19-cv-05432-DJH)

**U.S. DEPARTMENT OF USTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-353-2466

8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ARGUMENT**

1.   *Because this Court previously ruled that Kerr willfully failed to file FBARs with respect to four of the five Swiss accounts at issue, the United States is entitled to summary judgment regarding those accounts and this Court's inquiry into those accounts is limited to the penalty amounts.*

This Court has previously ordered that Kerr is precluded from challenging that he willfully failed to file FBARs for 2007 and 2008 reporting four of the Swiss accounts, specifically UBS accounts with account numbers ending 962, 796, 593 and the Pictet account with account number ending 531. (Ex. 4 at 6.) Accordingly, the United States is entitled to summary judgment that Kerr is liable pursuant to 31 U.S.C § 5321(a)(5) for willful FBAR penalties for 2007 and 2008 pertaining to UBS accounts with account numbers ending 962, 796, 593 and the Pictet account with account number ending 531.

2.   *Because Kerr willfully failed to file an FBAR for 2007 with respect to the Placeholder Account, he is liable for a willful FBAR penalty pertaining to that account for that year.*

  a.   *Kerr has admitted two of the four elements regarding the Placeholder Account and another element cannot be contested.*

With respect to the Placeholder Account, which was only included in the IRS's assessment for 2007, Kerr does not dispute the first and fourth elements of liability: that he is a United States citizen and that, if he was required to file an FBAR for the accounts at issue because he had the requisite interest in or authority over those accounts, then his failure to do so was willful. (Exs. 1 and 2, ¶¶ 13, 42; Ex. 3 at 3-4.) Although Kerr has not stipulated to the third element (*i.e.*, that the aggregate balance in all of the foreign accounts at issue at any time in 2007 were at least $10,000 USD), it is met here in two ways.

First, the Court's prior ruling that Kerr willfully failed to file FBARs for 2007 related to the other accounts necessarily included a determination that, in 2007, those other four accounts had an aggregate balance of $10,000 USD. Since this monetary requirement looks at the aggregate balance of *all* of a U.S. person's foreign accounts

United States' Motion for
Summary Judgment
(Case No. 2:19-cv-05432-DJH)

**U.S. DEPARTMENT OF USTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-353-2466

9

during the year to determine if the total was at least $10,000 USD, and not each singular account, this element is also met for the Placeholder Account. Thus, since that aggregate monetary threshold has already been found to have been met based on Kerr's other four Swiss accounts, the Court need not determine the balance in the Placeholder Account.

Second, even if the Court were to look at the balance in the Placeholder Account during 2007, the undisputed evidence shows that there was more than $10,000 USD in just that account in February 2007. The bank statement for the Placeholder Account shows that on February 14, 2007, the account balance was 100,000 CHF which corresponds to $80,420 USD. (Compare Ex. 28 at 3226_01_0023 with Ex. 26.)

    b.    *The last element is met as Kerr had the requisite financial interest in, or authority over, the Placeholder Account.*

Finally, the undisputed facts show that Kerr had a financial interest in, or other authority over, the Placeholder Account, which is an account in Switzerland. The FBAR regulations provide that a U.S. person has a "financial interest" in a foreign account if he is the "owner of record or has legal title whether the account is maintained for his own benefit or for the benefit of others" or if the owner of record or holder of legal title is a person acting as an agent, nominee, attorney or in some other capacity on behalf of the U.S. person. 31 C.F.R. § 1010.350(e)(1) and (2). However, if the U.S. person causes an entity, such as a corporation, to be created for a purpose of evading the regulation, then the U.S. person shall have the requisite financial interest in the account where the entity or corporation is the owner of record or holder of legal title. 31 C.F.R. § 1010.350(e)(3). This is known as the "anti-avoidance rule." *Id*. The FBAR regulations also provide that "signature or other authority" means the authority of an individual, either alone or in conjunction with another, "to control the disposition of money, funds or other assets held in a financial account by direct communication . . . to the person with whom the financial account is maintained." 31 U.S.C. § 1010.350(f)(1).

United States' Motion for
Summary Judgment
(Case No. 2:19-cv-05432-DJH)

**U.S. DEPARTMENT OF USTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-353-2466

10

1    Under the regulations for "financial interest" or "signature or other authority,"

2    Kerr had such interest or authority over the Placeholder Account.  Encompassed within

3    Kerr's prior criminal FBAR conviction was a finding Kerr had the requisite financial

4    interest in, or authority over, the four Swiss accounts identified in the Indictment. None

5    of those accounts were in Kerr's individual name and, in fact, the 962 account and the

6    Pictet account were in the name of Red Rock just like with the Placeholder Account.

7    Since the Placeholder Account was the original Swiss account in the name of Red Rock,

8    the entity created for Kerr to operate his business, and under Swiss law, the Placeholder

9    Account had to be opened and funded with 100,000 CHF before at least the 962 account

10   could be opened, Kerr's interest in or authority in those accounts flows directly from his

11   same authority over or interest in the Placeholder Account.

12   Whatever interest Kerr had in Red Rock, and thus with respect to Swiss bank

13   accounts in Red Rock's name, applies equally to all Swiss bank accounts in Red Rock's

14   name. This is especially true given the undisputed evidence that UBS treated the 962

15   account as the same account as the Placeholder Account, just with a different account

16   number. (Ex. 27 at 2226_0176a ("[the Placeholder Account] was opened [a]t the time the

17   customer wanted to incorporate this Swiss Company . . . [t]hereafter, the customer

18   decided to leave the account with UBS, and instead of [sic] using the same master

19   number, we opened [a] [sic] new relationship for the same company (XXXX-XXX962)

20   . . . [t]he amount of [sic] CHF 99700 was transferred from Red Rock [account] (XXXX-

21   XXX-974) to Red Rock (XXXX-XXX962) corporate account.").) This is supported by

22   the bank statements for the two UBS accounts in the name of Red Rock showing a

23   transfer of 99,700 CHF from account ending 974 to account ending 962 on February 19,

24   2007. (Compare Ex. 27 at 2226_0248 with Ex. 28 at 3226_01_0031.) It also corresponds

25   to an email Rusch had sent to Kerr describing what Kerr could do with the 100,000 CHF

26   that was wired to initially fund the placeholder account. (Ex. 21 ("You will then need to

27

28

United States' Motion for
Summary Judgment
(Case No. 2:19-cv-05432-DJH)

**U.S. DEPARTMENT OF USTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-353-2466

1   wire in the corporate capital of $100,000 CHF. Once the incorporation is complete, you

2   can withdraw $50,000 if you like. You can then use the remaining balance to pay

3   corporate expenses.").)

4        Because Kerr had the requisite financial interest in, or authority over, the

5   Placeholder Account, the last element of the United States' claim has been met.

6   Therefore, summary judgment is appropriate on the issue of liability for that account.

7   *3.     The Court should uphold the penalty assessed by the IRS in the reduced total amount for*
        *2007 and 2008 of $2,225,574.*

8        The IRS calculated a total penalty amount for 2007 and for 2008 comprised of a

9   proposed amount for each of Kerr's Swiss account for each year. For purposes of

10  calculating each penalty, the IRS exercised its discretion and determined that no

11  mitigation applied because Kerr had been criminally convicted. (Ex. 30 at 1385.)[4] The

12  IRS then determined the amount of the penalty using the balances reflected in the UBS

13  and Pictet bank statements that were admitted as exhibits in Kerr's criminal trial. The IRS

14  documented its findings from these records and the penalty calculations on IRS Form

15  886-A. (*Id.* at 1381-83; 1385-86.) With respect to the Placeholder Account, the IRS

16  proposed an amount of $40,985, which was half the balance of the account on February

17  14, 2007. (*Id.* at 1386.) For the other four accounts, the IRS proposed amounts equal to

18  the statutory maximum. (*Id.* at 1385–86.)

19        The statutory maximum of the willful penalty for each year, and thus the correct

20  penalty amount, was in turn tied to the balance of each Swiss account on the FBAR filing

21  deadline—*i.e.*, June 30, 2008 for 2007, and June 30, 2009 for 2008. If the balance in the

22  account was less than $200,000 USD on the filing deadline, then the statutory maximum

23  penalty defaulted to $100,000. 31 U.S.C. § 5321(a)(5)(C)(i). But if the balance was over

24

25

26  _____

[4] Citations to evidence in support of the penalty calculation are to pages in the
administrative record. The "USA-" Bates prefix has been excluded for brevity and just
the page numbers after "USA-" are identified.

27

28

$200,000 USD on that date, then the statutory maximum increased to half the balance in the account. *Id*.

Because the IRS believed that the available bank statements did not list an account balance on the precise date of the filing deadline for any of the accounts, they estimated the account balances on the filing deadlines using, as the best available evidence, the year-end balances for the year to be reported. (*Id.* at 1381–82.) For the 2007 penalties, the year-end balances for the four remaining accounts (UBS account numbers ending 962, 796, 593 and the Pictet account) were the balances on December 31, 2007. (*Id*.) Similarly, for the 2008 penalties, the year-end balances for the Pictet account and UBS account numbers ending 962 and 796 were the balances on December 31, 2008. (*Id.*) The remaining account, UBS account number ending 593, had no December 31 balance listed in the bank records. (*Id.* at 1382.) The latest balance that the IRS found for this account was on October 31, 2008. (*Id*.) It therefore treated the October 31 balance as the 2008 year-end balance for that UBS account. (*Id.*) After approximating the balance of each account on the filing deadline, the IRS proceeded to calculate the statutory maximum and propose equivalent penalties. (*Id.* at 1385–86.)

A subsequent review of the administrative record has revealed that the IRS erred in determining that the available bank statements did not include a balance on the FBAR filing deadline for any of the accounts. In fact, some of the bank statements available to the IRS did include account balances on the 2007 filing deadline (June 30, 2008) for the Pictet account and UBS account numbers ending 796 and 593. Some also revealed the balance of the Pictet account on the 2008 filing deadline (June 30, 2009). Those balances were reflected within year-end statements and were not simply account statements for the month of June that one might expect to exist. Lastly, it was also discovered that the reason there was no December 31, 2008 balance for UBS account number ending 593 is because that account closed in November 2008. Thus, because this account was closed on

United States' Motion for
Summary Judgment
(Case No. 2:19-cv-05432-DJH)

**U.S. DEPARTMENT OF USTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-353-2466

13

the 2008 filing deadline, there was no balance in this account on that date, meaning that the statutory maximum penalty defaults to $100,000.

The following table summarizes what the statutory maximum amounts per account that comprised the willful FBAR penalties that the IRS would have assessed if it had used the balance on the FBAR filing deadline, or information that the one account closed before the FBAR filing deadline, that was available to it at the time it assessed the willful FBAR penalties at issue.

| Account | Reporting Year | Year-End Balance | IRS Original Assessment | Balance on the June 30 Filing Deadline | What the Assessment Would Have Been | Difference |
|---------|---------|---------|---------|---------|---------|---------|
| Placeholder UBS (# - 734) | 2007 | $81,970 | $40,985 | $0 | Same | $0 |
| | 2008 | N/A | N/A | N/A | N/A | N/A |
| UBS (# - 962)[5] | 2007 | $756,235 | $378,117 | Unknown | Same | $0 |
| | 2008 | $126,058 | $100,000 | Unknown | Same | $0 |
| UBS (# - 796)[6] | 2007 | $1,436,171 | $718,085 | $934,400 | $467,200 | ($250,885) |
| | 2008 | $160,488 | $100,000 | Unknown | Same | $0 |
| UBS (# - 593)[7] | 2007 | $3,046,607 | $1,523,303 | $1,110,900 | $555,450 | ($967,853) |
| | 2008 | $971,195 | $485,597 | $0 | $100,000 | ($385,597) |

[5] See Ex. 31. Pages 3668 through 3675 show the 2007 year-end statement for UBS account number ending 962. The 2008 year-end statement is on pages 3746 through 3753. Neither statement includes a June 30 balance for this account.

[6] See Ex. 32. Pages 3883 through 3896 show the 2007 year-end statement for UBS account number 796. The 2008 year-end statement is on pages 3980 through 3990. This statement does include the June 30, 2008 balance on page 3983.

[7] See Ex. 33. Pages 4232 through 4240 show the 2007 year-end statements for UBS account number ending 593. The 2008 year-end statement is on pages 4241 through 4250. This statement does include the June 30, 2008 balance on page 4244. Also, the October 31, 2008 quarterly statement, which is what the IRS used to estimate the June 30, 2009 balance, is pages 4251 through 4257. Page 4156 shows a letter dated November 4,

United States' Motion for
Summary Judgment
(Case No. 2:19-cv-05432-DJH)

U.S. DEPARTMENT OF USTICE
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-353-2466

14

| | | | | | | |
|---|---|---|---|---|---|---|
| Pictet & Cie (# -531)[8] | 2007 | $501,523 | $250,761 | $877,185 | $438,593 | $187,832 |
| | 2008 | $408,244 | $204,122 | $90,458 | $45,229 | ($158,893) |
| **Total Difference** | | | | | | ($1,575,396) |

The United States therefore concedes that the Court cannot uphold the penalty amount originally assessed, because the IRS did not calculate the statutory maximum using all the best evidence available to her at that time. *See Earth Island Inst. v. U.S. Forest Serv.*, 697 F.3d 1010, 1013 (9th Cir. 2012) (explaining that courts will set aside an agency's decision if the agency offered an explanation that "runs counter to the evidence before the agency") (quoting *The Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008)). The differing amounts are reflected in the chart above.

However, with respect to the portion of the 2007 and 2008 penalties attributable to accounts for which there was no evidence of June 30, 2008 or 2009 balances (or that those accounts were not closed before the FBAR filing deadline), the Court should find that the IRS did not abuse its discretion. *See* IRM § 4.26.16.6.5.3. It is indisputable that at the time the IRS made its assessment, it did not have a June 30, 2008 balance for UBS account number ending 962 or a June 30, 2009 balance for UBS account numbers ending 962 and 796. Thus, because there were no June 30 account balance information available, the IRS exercised its discretion and used the best evidence available, which was the balances as of the end of the calendar year for which the penalties applied—*i.e.* December 31, 2007 and 2008 balances. One court required the IRS to use a December 31 account balance rather than the June 30 FBAR filing deadline balance, which indicates that using June 30 FBAR filing deadline balances is not required in every circumstance.

2008 to UBS requesting that this account be closed. Because the IRS did not have a 2008 year-end statement, it treated the 2008 year-end balance as the October 31, 2008 balance.

[8] *See* Ex. 34. Pages 4844 through 4854 show the 2007 year-end statement. The 2008 year-end statement is on pages 4855 through 4867. This statement does include the June 30, 2008 balance on page 4860. The 2009 year-end statement is on pages 4868 through 4879. This statement does include the June 30, 2009 balance on page 4875.

United States' Motion for
Summary Judgment
(Case No. 2:19-cv-05432-DJH)

**U.S. DEPARTMENT OF USTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-353-2466

15

1  *United States v. Bussell*, 2015 WL 9957826, at *7 (C.D. Cal. Dec. 8, 2015), *aff'd*, 699 Fed.

2  Appx. 695 (9th Cir. 2017).

3      When courts decline to enforce an agency's decision, they will in some

4  circumstances "remand to the agency for additional investigation or explanation." *Fla.*

5  *Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). In this case, however, a remand

6  is unnecessary. The IRS was within its discretion to set the amount of the penalty for

7  2007 attributable to the placeholder account at $40,985 and the statutory maximum for

8  the amounts of the 2007 and 2008 penalties attributable to the other four accounts. From

9  the evidence available in the administrative record, it can be conclusively determined that

10  the most accurate calculation of the statutory maximum is $2,225,574: $1,880,345 for

11  2007 and $345,229 for 2008 as shown in the table above. Thus, the Court should enter

12  judgement in that reduced amount, plus statutory interest, collection related fees pursuant

13  to 31 U.S.C. § 3717(e)(2), and late payment penalties pursuant to 31 U.S.C. § 3717(e)(2).

14  *See United States v. Schwarzbaum*, 2020 WL 2526500, at *1 (S.D. Fla. May 18, 2020)

15  (reassessing the correct FBAR penalties where the IRS miscalculated the statutory

16  maximum and entering judgment in that amount). If the Court grants the United States'

17  motion with respect to the requested reduced assessed penalty amount, the parties can

18  either stipulate to the amount of the judgment (that will include statutory interest and

19  other statutory accruals) or the parties can submit supplemental briefs proposing the

20  amount of the judgment.

21      Entering judgment on a reduced penalty amount, rather than remanding, will not

22  prejudice Kerr in any way because the total assessed willful FBAR penalty itself, without

23  including interest or other statutory accruals, that the United States proposes here is

24  $1,575,396 less than the original assessed amount (without interest or other statutory

25  accruals): $1,030,906 less for 2007 and $544,490 less for 2008. It is likewise equal to the

United States' Motion for
Summary Judgment
(Case No. 2:19-cv-05432-DJH)

**U.S. DEPARTMENT OF USTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-353-2466

16

result of a new assessment on remand. Accordingly, forgoing remand will provide finality in this matter and conserve limited agency and party resources.

**CONCLUSION**

For the foregoing reasons, the Court should grant the United States' motion for summary judgment, order that Kerr is liable for willfully failing to FBARs for 2007 and 2008 reporting all five of his Swiss accounts, and order the parties to either stipulate to a final judgment or submit supplemental briefing as to a final judgment that includes the base willful FBAR penalty to be $2,225,574 plus statutory interest and other statutory accruals under 31 U.S.C. § 3717(e)(1) and (2) calculated through the date of the Court's order.


Dated: June 24, 2021.

> DAVID A. HUBBERT
> Acting Assistant Attorney General
>
> */s/ Jeremy N. Hendon*
> JEREMY N. HENDON
> CHARLES J. BUTLER
> MATTHEW P. UHALDE
> Trial Attorneys, Tax Division
> U.S. Department of Justice
>
> ANTHONY MARTIN
> Acting United States Attorney
> *Of Counsel*
>
> *Attorneys for the United States of America*

United States' Motion for
Summary Judgment
(Case No. 2:19-cv-05432-DJH)

**U.S. DEPARTMENT OF USTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-353-2466

## <u>CERTIFICATE OF SERVICE</u>

IT IS HEREBY CERTIFIED that service of the foregoing has been made this 24th day of June, 2021 via the Court's CM/ECF system to:

Brandon A. Keim                        bkeim@frgalaw.com, mnorthcott@frgalaw.com

<u>*/s/ Jeremy N. Hendon*   </u>
JEREMY N. HENDON
Trial Attorney, Tax Division
U.S. Department of Justice