DAVID A. HUBBERT
Acting Assistant Attorney General

JEREMY N. HENDON
CHARLES J. BUTLER
MATTHEW P. UHALDE
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 683, Ben Franklin Station
Washington, D.C. 20044
202-353-2466 (v)
202-307-0054 (f)
Jeremy.Hendon@usdoj.gov
Charles.J.Butler@usdoj.gov
Matthew.P.Uhalde@usdoj.gov

ANTHONY MARTIN
Acting United States Attorney
*Of Counsel*

*Attorneys for the United States of America*

IN THE UNITED STATES DISTRICT COURT
 FOR THE DISTRICT OF ARIZONA

| United States of America, | |
|---|---|
| Plaintiff, | Case No. 2:19-cv-05432-DJH |
| v. | **United States' Opposition to Defendant's Motion for Partial Summary Judgment** |
| Stephen M. Kerr, | |
| Defendant. | |

# TABLE OF CONTENTS

Page

**ARGUMENBT** ................................................................................................ 1

1. Although the IRS partly abused its discretion when computing the willful FBAR penalty amount, the Court should enter judgment in the corrected amount rather than remand to the IRS. ........................................................................... 1

   a.   Factual Background ..................................................................................... 1

   b.   Kerr cannot argue that the IRS should have obtained more evidence. ......... 3

   c.   Limiting its review to the evidence in administrative record, the Court must find that the IRS abused its discretion only to the extent that the civil FBAR penalties totaled more than $2,225,574. .................................................... 5

      i.    The UBS 734 "placeholder" account ................................................. 5

      ii.   The UBS 593 account and the Pictet 531 account ............................ 6

      iii.  The UBS 796 account ....................................................................... 6

      iv.   The UBS 962 account ....................................................................... 7

2. The statute of limitations does not bar modifying the penalty amount. ................... 9

3. The Eighth Amendment's Excessive Fines Clause does not prohibit the penalty here. ................................................................................................................. 10

   a.   Civil FBAR penalties are not "fines" under the Eighth Amendment. ......... 10

   b.   The penalty here is not unconstitutionally excessive. ................................. 12

4. The regulation capping the penalty at $100,00 was superseded by Congress. ...... 15

**CONCLUSION** .............................................................................................. 17

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-353-2466

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arizona v. California*,
530 U.S. 392 (2000).................................................................................................. 14

*Austin v. United States*,
509 U.S. 602 (1993).................................................................................................. 11

*Balice v. U.S. Dep't of Agriculture*,
203 F.3d 684 (9th Cir. 2000) .................................................................................... 12

*Crawford v. U.S. Dept. of Treas.*,
2015 WL 5697552 (S.D. Ohio 2015)........................................................................ 12

*Farrell v. United States*,
313 F.3d 1214 (9th Cir. 2002) .................................................................................. 16

*Garner v. U.S. Dep't of Lab.*,
221 F.3d 822 (5th Cir. 2000) .................................................................................... 11

*Helvering v. Mitchell*,
303 U.S. 391 (1938).................................................................................................. 11

*Hudson v. United States*,
522 U.S. 93 (1997).................................................................................................... 11

*Jones v. United States*,
2020 WL 2803353 (C.D. Cal. May 11, 2020) ............................................................ 9

*Kelly v. U.S. EPA*,
203 F.3d 519 (7th Cir. 2000) .................................................................................... 13

*Landa v. United States*,
No. 18-365, 2021 WL 1526511 (Fed. Cl. Apr. 19, 2021) ......................................... 10

*Lands Council v. Powell*,
395 F.3d 1019 (9th Cir. 2005) ................................................................................. 3, 4

*Louis v. Commissioner*,
170 F.3d 1232 (9th Cir. 1999) .................................................................................. 11

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-353-2466

*Maciel v. Comm'r*,
  489 F.3d 1018 (9th Cir. 2007) ................................................................ 14

*Norman v. United States*,
  942 F.3d 1111 (Fed. Cir. 2019)............................................................... 16

*Pharaon v. Bd. of Governors of Federal Reserve System*,
  135 F.3d 148 (D.C. Cir. 1998) ................................................................. 13

*Pimentel v. L.A.*,
  974 F.3d 917 (9th Cir. 2020) ................................................................... 13

*Qwest Corp. v. Minn. Pub. Utils. Comm'n*,
  427 F.3d 1061 (8th Cir. 2005) ................................................................. 13

*Pac. Architects & Engineers Inc. v. U.S. Dep't of State*,
  906 F.2d 1345 (9th Cir. 1990) ................................................................... 4

*San Luis & Delta-Mendota Water Auth. V. Locke*,
  776 F.3d 971 (9th Cir. 2014 ....................................................................... 8

*Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*,
  100 F.3d 1443 (9th Cir. 1996) ................................................................... 3

*Thomas v. Commissioner*,
  62 F.3d 97 (4th Cir. 1995)....................................................................... 11

*United States v. $132,245.00 in U.S. Currency*,
  764 F.3d 1055 (9th Cir. 2014) ..................................................... 12, 13, 14

*United States v. $814,254.76, in U.S. Currency, Contents of Valley Nat.*
  *Bank Acct. No. 1500-8339*,
  51 F.3d 207 (9th Cir. 1995) ..................................................................... 11

*United States v. Bajakajian*,
  524 U.S. 321 (1998)..........................................................................*passim*

*United States v. Bussell*,
  2015 WL 9957826 (C.D. Cal. 2017)........................................................ 11

*United States v. Bussell*,
  699 F. App'x 695 (9th Cir. 2017) ............................................................ 12

*United States v. Chaplin's, Inc.*,
  646 F.3d 846 (11th Cir. 2011) ................................................................. 13

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-353-2466

*United States v. Cohen*,
   No. CV 17-1652-MWF (JCX), 2019 WL 4605709 (C.D. Cal. Aug. 6,
   2019) ........................................................................................................ 16

*United States v. Collins*,
   2021 WL 456962 (W.D. Pa. 2021) ..................................................... 10, 12

*United States v. Colliot*,
   No. AU-16-CA-01281-SS, 2018 WL 2271381 (W.D. Tex. May 16,
   2018) ........................................................................................................ 16

*United States v. Estate of Schoenfeld*,
   344 F. Supp.3d 1354 (M.D. Fla. 2018) ................................................ 11, 12

*United States v. Garrity*,
   2019 WL 1004584 (D. Conn. Feb. 28, 2019) ...................................... 11, 12

*United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc.*,
   728 F. Supp. 2d 1077 (N.D. Cal. 2010) ......................................................... 4

*United States v. Horowitz*,
   978 F.3d 80 (4th Cir. 2020) .......................................................................... 16

*United States v. Kahn*,
   No. 19-3920, 2021 WL 2931305 (2d Cir. July 13, 2021) ............................ 16

*United States v. Mackby*,
   339 F.3d 1013 (9th Cir. 2003) ...................................................................... 12

*United States v. Nat'l Dairy Prods. Corp.*,
   372 U.S. 29 (1963) ........................................................................................ 12

*United States v. Rum*,
   995 F.3d 882 (11th Cir. 2121) ................................................................... 3, 16

*United States v. Schwarzbaum*,
   2020 WL 2526500 (S.D. Fla. 2020) ............................................................. 11

*United States v. Wahdan*,
   325 F. Supp. 3d 1136 (D. Colo. 2018) ......................................................... 16

**Statutes**

31 U.S.C. § 5321(a)(5) .................................................................................. 2, 6

United States' Opposition to Defendant's Motion for Partial
Summary Judgment
(Case No. 2:19-cv-05432-DJH)

iv

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-353-2466

31 U.S.C. § 5321(a)(5)(B)(ii) (2003) ................................................................ 15

31 U.S.C. § 5321(a)(5)(C) & (D)(ii) ................................................................ 15

31 U.S.C. §§ 5321(f) and (g) and 5322(a)–(b) ................................................ 15

31 U.S.C. § 5322 .............................................................................................. 15

31 U.S.C. §§ 5322(a) & (b) ............................................................................. 10

**Regulations**

31 C.F.R. § 103.47(g)(2) (1987), *renumbered as* 31 C.F.R. § 103.57(g)(2)
(1999), *renumbered as* 31 C.F.R. § 1010.820(g) (2010) ........................... 15

**Other Authorities**

U.S. CONST. amend. V ...................................................................................... 4

U.S. CONST. amend. VIII ........................................................................... *passim*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States' Opposition to Defendant's Motion for Partial
Summary Judgment
(Case No. 2:19-cv-05432-DJH)

v

**U.S. DEPARTMENT OF JUSTICE**
Tax Division, Western Region
P.O. Box 683
Washington, D.C.  20044
Telephone: 202-353-2466

Both parties filed motions for summary judgment on June 24, 2021. Relevant here, the United States conceded in its motion $1,575,396 of the original $3,800,970 penalty that the IRS assessed and asked the Court to enter judgment against Kerr in the reduced amount of $2,225,574. (U.S. Motion for Summary Judgment at 12–17, ECF No. 46.)  In his partial summary judgment motion, Kerr raised two legal arguments against imposition of any penalty and then contended that if a penalty were to be imposed, the correct amount of the penalty was $2,293,701, or $68,127 more than what the United States requested (Kerr Motion for Partial Summary Judgment at 23, ECF No. 47.)

Thus, should Kerr's legal arguments fail, there does not appear to be a dispute over the amount of the penalty – Kerr concedes the reduced penalty amount sought by the United States is appropriate under IRS guidelines. As discussed below, however, Kerr's legal arguments do fail, as the FBAR penalty is not a fine under the Eighth Amendment and even if it were, it was not excessive in this case. Further, as all Courts of Appeals and the vast majority of district courts who have addressed the issue have found, the amendment to the FBAR statute providing for a larger willful FBAR penalty trumps a prior Treasury regulation that had capped the penalty to $100,000 per year.

## ARGUMENT

1. *Although the IRS partly abused its discretion when computing the willful FBAR penalty amount, the Court should enter* judgment *in the corrected amount rather than remand to the IRS.*

    a. *Factual Background*

In March 2013, a jury convicted Kerr of willfully failing to file FBARs disclosing his interest in four Swiss bank accounts in 2007 and 2008: three of the accounts were at Union Bank of Switzerland ("UBS"), account numbers ending 962, 796, and 593, and the fourth account was at Pictet & Cie ("Pictet"), account number ending 531. Kerr's direct appeal was denied and, after a failed motion for a new trial, he appealed that ruling which also was denied.

1    On October 24, 2013, while Kerr's direct appeal of his conviction was pending,

2    IRS Criminal Investigations ("CI") arranged for Revenue Agent Teresa Mead to review

3    the case and propose civil penalties against Kerr for the same willful FBAR violations

4    and same years that led to the criminal case. (Def. Ex. 6 at 2, ECF No. 47-6.) However,

5    because Kerr was appealing his conviction, CI instructed Mead not to contact Kerr for

6    information. (Def. Ex. 9 at 17:8–15, ECF No. 47-9.) Furthermore, the statute of

7    limitations to assess a civil FBAR penalty for 2007 was set to expire in eight months, on

8    June 30, 2014. (Def. Ex. 6 at 2.) Thus, Mead concluded that there was not enough time to

9    request bank records from Switzerland through a tax treaty. (Def. Ex. 9 at 78:4–11.) As a

10    result, Mead relied on the Swiss bank records and other exhibits from Kerr's criminal

11    trial to compute the civil willful FBAR penalties.

12    Using those exhibits, Mead proposed total penalties for 2007 and 2008 that were

13    comprised of amounts for the four accounts mentioned in the indictment, plus a fifth

14    placeholder account at UBS, account number ending 734. Mead documented her method

15    for computing the penalty amounts on IRS Form 886-A. (Gov. Ex. 30, ECF No. 46-31.)

16    For the 2007 penalty regarding the placeholder account, Mead proposed $40,985. That

17    amount equaled one-half the account's highest known balance in 2007. Next, for the

18    other four accounts, Mead proposed that the applicable penalty amounts attributable to

19    each account should equal the statutory maximum. Thus, for any account with a balance

20    less than $200,000 on the violation date, the applicable penalty amount for any such

21    account would be $100,000. 31 U.S.C. § 5321(a)(5). For any account with a balance over

22    $200,000 on the violation date, the applicable penalty amount for any such account

23    would be equal to one-half that balance. *Id.*

24    Mead stated in her Form 886-A that none of the available Swiss bank statements

25    for the four accounts listed the balance on the violation date—June 30, 2008 for the 2007

26    penalty and June 30, 2009 for the 2008 penalty. Consequently, Mead estimated the June

27    30 balances of the four accounts using the balances on earlier dates as the best available

28

1    evidence. Mead's proposed penalties were adopted by the IRS without change and were

2    then assessed against Kerr.

3            In his motion for partial summary judgment, Kerr does not challenge the IRS's

4    decision to use the statutory maximum for every account other than the placeholder

5    account. Instead, Kerr argues that Mead (and thus the IRS) abused her discretion only as

6    to how she determined what the statutory maximums were, *i.e.*, how she determined what

7    the account balances on the June 30 violation date were.

8            Where the precise June 30 balance appeared in Swiss bank records in the

9    administrative record, the United States agrees with Kerr that it was an abuse of

10   discretion not to use them. That was the basis for the United States' reduction in the

11   amount of the penalty for which it seeks judgment against Kerr. Consequently, the only

12   potential remaining dispute centers on the one account balance, out of nine, for which the

13   IRS's estimate was greater than a competing estimate offered by Kerr.

14           Here, Kerr makes two arguments. First, Kerr argues that the IRS should have done

15   more to obtain a UBS bank record showing the precise June 30 balance. Second, turning

16   to the bank records that the IRS did have, Kerr argues that the IRS abused its discretion

17   by how it estimated the June 30 balances from these documents.

18           b.      *Kerr cannot argue that the IRS should have obtained more evidence.*

19           Courts review the IRS's penalty computation under the standards of the

20   Administrative Procedure Act ("APA"). *United States v. Rum*, 995 F.3d 882, 888 (11th

21   Cir. 2121). Thus, the evidence available to determine the June 30 balances is limited to

22   whatever documents the IRS possessed when it assessed the penalties—*i.e.*, the

23   administrative record. *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d

24   1443, 1450 (9th Cir. 1996). A court reviewing the agency's decision cannot admit extra-

25   record evidence or question the agency's evidence-gathering procedures absent clear

26   evidence that the agency acted in bad faith.[1] *Lands Council v. Powell*, 395 F.3d 1019,

27   _____

28   [1] There are three other circumstances when a court may consider evidence outside the
     administrative record, none of which apply here. First is when extrinsic evidence "is

3

1030 (9th Cir. 2005). Moreover, courts are generally not permitted to independently revisit an adjudicative record where factfinding procedures are adequate. *Pac. Architects & Engineers Inc. v. U.S. Dep't of State*, 906 F.2d 1345, 1348 (9th Cir. 1990). Such procedures are adequate where the affected party has a meaningful opportunity to present his own argument and evidence to the agency. *See, e.g., Id.*, *United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc.*, 728 F. Supp. 2d 1077, 1085 (N.D. Cal. 2010).

Here, Kerr has not offered any evidence that the IRS acted in bad faith. Further, Kerr was afforded opportunities to present his own evidence to the IRS, including the opportunity to pursue an appeal of the proposed penalty. Therefore, the Court cannot second-guess how the IRS compiled the administrative record or whether it should have tried to obtain more bank records. Under APA principles, the inquiry ends there.

But even if the Court did scrutinize the IRS's evidence-gathering procedures, nothing that the IRS did or failed to do was unreasonable. Kerr only proposes two additional fact-finding procedures that he argues the IRS should have done. First, Kerr claims that the IRS should have contacted him for information during its examination. Second, he argues that the IRS should have requested additional UBS records through a tax treaty from Switzerland. Neither claim shows the IRS acted abusively.

The decision not to contact Kerr during the examination, even if it were reviewable (it is not), was a proper exercise of agency discretion. During the IRS's examination, it was more than sensible to conclude that Kerr would not cooperate with any attempt to obtain bank records from him. At that time, Kerr was aggressively denying that he knew about the accounts at issue and was appealing his criminal conviction. In addition, Kerr did not testify at his criminal trial, which gave the impression that he was unwilling to waive his Fifth Amendment privilege. Moreover, although Kerr argues that

---

necessary to determine whether the agency has considered all relevant factors and has explained its decision." *Powell*, 395 F.3d at 1030 (internal quotation marks omitted). Second is when "the agency has relied on documents not in the record." *Id.* Third is when "supplementing the record is necessary to explain technical terms or complex subject matter." *Id.*

the IRS should have asked him for documents, he tellingly does not claim that such a request would have succeeded. The notion that Kerr would have cooperated with a civil examination after refusing to give any ground in a criminal prosecution strains belief.

Nor was requesting bank records from Switzerland a clear option. As Mead explained in her deposition, which Kerr cites, doing so was similarly futile. (Def. Ex. 9 at 78:4–11.) The IRS was unlikely to receive a response in time to complete the assessment before the statute of limitations expired. Accordingly, even if the Court could review non-final agency decision-making under APA principles (it cannot), there is no basis to find that any of the IRS's evidence-gathering decisions were abusive. In sum, the evidence to be reviewed to determine the June 30 balances is limited to the administrative record, and, even if it were not, the IRS acted reasonably at each step.

  c. *Limiting its review to the evidence in administrative record, the Court must find that the IRS abused its discretion only to the extent that the civil FBAR penalties totaled more than $2,225,574.*

The United States has conceded in its motion that the IRS erred in computing the total penalty amount from the evidence in its possession. Even so, that does not mean, as Kerr claims, that the Court should remand the penalty determination to the IRS to modify the penalty assessment. From the administrative record, the Court can decide as a matter of law both (1) every instance where the IRS erred, and (2) the precise dollar amount of each error with respect to the IRS's original assessment. Thus, the Court should simply reduce the penalty by the amount of the error as set forth by the United States in its motion and enter judgment accordingly.

The following provides a breakdown by account:

  i. *The UBS 734 "placeholder" account*

This account was only open in 2007 and was not part of the 2008 penalty. From the administrative record, the highest known balance was $81,970 (100,00 Swiss francs) in February 2007. Although the IRS could have determined that the amount should be

$100,000 since there was a June 30, 2008 $0 balance, the IRS properly exercised its discretion for the amount of the yearly penalty attributable to this account to be 50% of the highest account balance which turns out to have been less than $100,000.

Kerr argues, without support, that the IRS should have assessed a penalty equal to 50% of the March 2007 balance, because that date is closer in time to the date of the violation, June 30, 2008, and provides a closer estimate of what the balance on the violation date was. What this argument overlooks, however, is that the statutory maximum does not always equal 50% of the June 30 balance. Instead, the statutory maximum equals 50% of the June 30 balance if and only if that balance exceeds $200,000. 31 U.S.C. § 5321(a)(5). But if the June 30 balance is under $200,000, then the statutory maximum is $100,000. *Id.* Consequently, the portion of the 2007 penalty attributable to the placeholder account is not an abuse of discretion.[2]

        *ii.*     *The UBS 593 account and the Pictet 531 account*

The IRS concluded that the account statements in the administrative record did not show the June 30 balance for either of these accounts for either year. The IRS therefore used the closest earlier balances listed in the bank records as the best available evidence of the June 30 balances. As the United States explained in its motion, however, this was one of the IRS's isolated errors. (ECF No. 46 at 13-16.) The precise June 30 balance for the Pictet 531 account was located within a statement in the administrative record. The administrative record also contained evidence that the UBS 593 account closed in November 2008, so its balance on June 30, 2009 was $0. Therefore, the correct balances and corresponding statutory maximums are summarized in the U.S. Motion. (ECF No. 46 at 14.)

        *iii.*     *The UBS 796 account*

---

[2] Whether Kerr is liable for willfully failing to report this account is a separate issue that Kerr did not address in his motion for partial summary judgment. However, it is part of the United States' motion for summary judgment.

The IRS estimated the June 30, 2008 balance (the date of the 2007 violation) using the balance on December 31, 2007. As with the UBS 593 and Pictet 531 accounts, this was an error. The administrative record includes a statement showing the precise June 30 balance and thus the correct statutory maximum for the portion of the 2007 penalty attributable to this account. (ECF No. 46 at 14.)

By contrast, the precise June 30, 2009 balance (the date of the 2008 violation) for this account does not appear in the administrative record. Although Kerr's purported expert provides an estimate of a June 30, 2009 balance for this account that is greater than $200,000, she too agrees that the amount of the 2008 penalty attributable to this account should only be $100,000 as the IRS assessed. (ECF No. 46 at 14). Thus, there is no dispute concerning the correct penalty amount for the UBS 796 account.

iv.    <em>The UBS 962 account</em>

The parties agree that the precise June 30, 2008 and June 30, 2009 balances are not in the administrative record. With respect to the 2008 penalty, although Kerr's purported expert provides an estimate of a June 30, 2009 balance for this account that is greater than $200,000, she too agrees that the amount of the 2008 penalty attributable to this account should only be $100,000 as the IRS assessed. (ECF No. 46 at 14.)

With respect to the June 30, 2008 balance (the date of the 2007 violation), the parties disagree. Out of the nine account balances used to calculate amounts for each account attributable to the yearly penalties in this case (five for 2007 and four for 2008), this is the only account balance that the parties dispute. The IRS's estimate, using the December 31, 2007 balance, was $756,235. (ECF No. 46 at 14.) The IRS consequently assessed a $378,117 contribution to the 2007 penalty for this account.

The IRS estimated the June 30 balance by using the December 31, 2007 balance as that was the closest available balance it had. Because the precise June 30, 2008 balance was not found in the available Swiss bank records, it was not an abuse of discretion for the IRS to estimate the balance using the closest earlier balance. <em>See</em> Internal Revenue

7

Manual § 4.26.16.5.5.3, https://www.irs.gov/irm/part4/irm_04-026-016, [https://perma.cc/D7DR-M2ZA].

Kerr's sole means of challenging the IRS's number relies an expert witness report from Sheri Betzer. But that is just another argument that impermissibly looks beyond the administrative record. As with all extra-record evidence, expert declarations are rarely admissible in APA litigation. For example, in *San Luis & Delta-Mendota Water Auth. v. Locke*, the Ninth Circuit held that a district court violated the APA by admitting expert declarations to reassess an agency's decision. 776 F.3d 971, 993 (9th Cir. 2014). As the *Locke* decision explained, a district court may rely on experts to understand technical jargon in an administrative record. *Id.* But "it may not *use* the admitted extra-record evidence to determine the correctness or wisdom of the agency's decision. Such use is never permitted." *Id.* (internal citation and quotation marks omitted).

Here, not only are Betzer's opinions themselves extra-record evidence, but so is the data that she relied on in forming those opinions. Betzer did not confine herself to the administrative record. Instead, she used Internet research and data provided from Kerr's lawyer to come up with historic June 30 values for the stocks that she guessed were in the account on that date. (Betzer Depo. 27:4–8, July 2, 2021, Exhibit 1.) However, because that information came from the sources outside the record, it is "impermissible" for the court to consider it. *Locke*, 776 F.3d at 993. And to be clear, the IRS was not obligated to do this Internet research itself, much less ask Kerr's lawyer for the stock values.

Furthermore, even if APA principles did not blanketly prohibit Betzer's expert report, her methodology was too unreliable for the Court to consider it. Betzer did not actually provide June 30 account balances. Instead, she made assumptions as to the number or shares of stock in the various Swiss accounts and then used extrinsic evidence in the form of Internet stock valuations to determine historical June 30 stock prices. (Betzer Depo. 49:12–20; 51:4–9; 76:19–77:9 ) For every stock whose number of shares on December 31, 2008 was the same as on December 31, 2007, Betzer simply "assumed" that the number of shares did not fluctuate during all of 2008. (Betzer Depo. at 54:4–15.)

She thus estimated the number of shares on June 30 using account statements that were each six months from that date. Nor did Betzer know for certain whether any other types of stock, besides those listed in the year-end statements, were in the account on June 30. Thus, Betzer's procedure contained no fewer inferences than what the IRS did.

One example clearly demonstrates why Betzer's methodology was unreliable and should not be considered. With respect to UBS account 796, Betzer incorrectly believed, like the IRS, that the June 30, 2008 balance was not in the administrative record. However, it was, and the balance was $934,400. Using her methodology, Betzer guessed a balance of $975,388. (ECF No. 46 at 14). This example shows that Betzer's opinions as to account balances cannot be trusted.

To summarize, and for the reasons further explained in the U.S. Motion, the Court, properly limited to the administrative record, can determine the objective dollar amount that the penalties exceeded the statutory maximum by. Thus, there is no need for a remand. The Court should simply enter judgment in the reduced amount equal to the statutory maximum for all but the placeholder account. (ECF No. 46 at 12–17.)

2.     *The statute of limitations does not bar modifying the penalty amount.*

The United States does not dispute that the limitations period to assess civil FBAR penalties for 2007 and 2008 has passed. However, because the penalties in this case were timely assessed, the statute of limitations is inapplicable. All that it now prohibits would be an entirely new assessment, which is not the same thing as a modification. *See Jones v. United States*, 2020 WL 2803353, at *8 (C.D. Cal. May 11, 2020) (rejecting a similar statute of limitations argument because any remand to the IRS "would not be [for] a new assessment of penalties, but rather a recalculation of the initial penalty"). Certainly, the statute of limitations does not prohibit a modification that *decreases* the overall penalty, as this proposed modification would for both years. (As explained in its motion, the United States asks the Court to decrease the 2007 penalty to $1,880,345 and the 2008 penalty to $345,229.)

Contrary to what Kerr argues, there is only one FBAR penalty per year that is comprised of amounts attributable to each foreign account. Thus, if the Court were inclined to disagree with *Jones* and find that the statute of limitations may apply even if an FBAR assessment has already been made, the Court should only focus on whether the overall amount of the penalty increases and not whether an amount attributable to any individual account increases. If the penalty total for neither year increases, then there is no new additional amount being assessed and thus there would be no statute of limitations problem. That is what is happening here. Accordingly, even though the United States' proposed modification of the penalty amount causes an increase of $187,832 to the amount attributable to the Pictet 531 account for the 2007 penalty, the overall amount of the 2007 penalty decreases. There is no statute of limitations problem.

3. *The Eighth Amendment's Excessive Fines Clause does not prohibit the penalty here.*

Kerr asserts that the penalty violated the Eighth Amendment's Excessive Fines Clause. He is wrong, as the FBAR penalty is neither a fine nor excessive.

a. *Civil FBAR penalties are not "fines" under the Eighth Amendment.*

A civil penalty is not a "fine" covered by the Eighth Amendment if it is not "punishment for some offense." *United States v. Bajakajian*, 524 U.S. 321, 328 (1998) (quotation marks omitted). A sanction is a punishment if it is "imposed at the culmination of a criminal proceeding" and requires "conviction of an underlying" crime. *Id.* at 328. The FBAR penalty, however, is civil and can be imposed without criminal prosecution. Rather, in 31 U.S.C. § 5322, Congress separately provided criminal penalties, described (unlike with civil penalties) as "fine[s]." 31 U.S.C. §§ 5322(a) & (b).

A civil penalty is not a punishment if it "serve[s] the remedial purpose of compensating the Government for a loss." *Bajakajian*, 524 U.S. at 329. In enacting the BSA, Congress contemplated that the use of "secret foreign bank account[s]" was the "largest single tax loophole permitted by American law," causing the "debilitating effect[]" of "hundreds of millions" of dollars in lost tax revenues. H.R. Rep. No. 91-975, at 12-

13. Investigating secret bank accounts is time-consuming and expensive. *See id.* at 12. All courts to address the question have determined that § 5321 civil FBAR penalties offset these losses and, therefore, are remedial and not subject to the Excessive Fines Clause. *See Landa v. United States*, No. 18-365, 2021 WL 1526511, at *16 (Fed. Cl. Apr. 19, 2021); *United States v. Collins*, 2021 WL 456962, *8-9 (W.D. Pa. 2021); *United States v. Schwarzbaum*, 2020 WL 2526500, *5-8 (S.D. Fla. 2020); *United States v. Estate of Schoenfeld*, 344 F. Supp.3d 1354, 1369-73 (M.D. Fla. 2018).[3]

Kerrr's contrary argument turns on *Austin v. United States*, 509 U.S. 602 (1993). In Austin, the Court held that *in rem* civil forfeitures can qualify as fines within the meaning of the Eighth Amendment. 509 U.S. at 606-622. But nothing in "the *Austin* opinion . . . suggests that the Court intended for its Eighth Amendment analysis to extend beyond the civil forfeiture context." *Thomas v. Commissioner*, 62 F.3d 97, 103 (4th Cir. 1995). And the distinction between *in personam* penalties (like the one at issue here) and *in rem* forfeitures (like the ones at issue in *Austin*) is well established. *See United States v. $814,254.76, in U.S. Currency, Contents of Valley Nat. Bank Acct. No. 1500-8339*, 51 F.3d 207, 210 (9th Cir. 1995).

Further, Kerr's claim that any deterrence constitutes punishment is irreconcilable with *Helvering v. Mitchell*, 303 U.S. 391, 401-05 (1938), which holds that civil tax penalties, including penalties for fraud with intent to evade tax, are remedial. Even substantial civil tax penalties are not fines under the Eighth Amendment.[4] *See, e.g.*, *Louis*

---

[3] No court has expressly decided that an FBAR penalty is a "fine" subject to the Eighth Amendment. Kerr's reliance on *United States v. Garrity*, 2019 WL 1004584 (D. Conn. Feb. 28, 2019), and *United States v. Bussell*, 2015 WL 9957826 (C.D. Cal. 2017), for that premise is misplaced. In *Garrity*, the court found this issue unnecessary to decide. *See Garrity*, 2019 WL 1004584 at *6 n.7. ("The Government argues that a willful FBAR penalty is not a 'fine' subject to scrutiny under the Eighth Amendment. Because I conclude that the penalty in this case does not in any event violate the Eighth Amendment, I do not address the Government's contention."). In *Bussell*, the court began its abridged Eighth Amendment analysis at the second step, considering whether the penalty was excessive, and did not address whether an FBAR penalty was a "fine." 2019 WL 1004584, at *6.

[4] "[A]ll civil penalties have some deterrent effect," *Hudson v. United States*, 522 U.S. 93, 102 (1997), but that "does not automatically render [them] punitive," *Garner v. U.S. Dep't of Lab.*, 221 F.3d 822, 827 (5th Cir. 2000). Thus, cases theorizing that FBAR penalties have deterrent effect are not determinative.

*v. Commissioner*, 170 F.3d 1232, 1236 (9th Cir. 1999). Although the civil FBAR penalty is not a Title 26 "tax" penalty, it is more analogous to a nonpunitive tax penalty than to the forfeitures tied to criminal convictions addressed in *Bajakajian* and *Austin*.

       b.     *The penalty here is not unconstitutionally excessive.*

A fine violates the Excessive Fines Clause only "if it is grossly disproportional to the gravity of a defendant's offense." *Bajakajian*, 524 U.S. at 334. The burden is on the party challenging the constitutionality of a fine to demonstrate its excessiveness. *United States v. $132,245.00 in U.S. Currency*, 764 F.3d 1055, 1058 (9th Cir. 2014).

In deciding whether a fine is grossly disproportional and therefore excessive, the Court does not apply a "rigid set of factors." *United States v. Mackby*, 339 F.3d 1013, 1016 (9th Cir. 2003). The Court generally considers: the amount of the penalty authorized by Congress; the class of persons for whom the statute at issue was principally designed; the seriousness of the offense and its relation to other illegal activity; the harm caused; and a comparison with the potential criminal penalties, including imprisonment. *See id*. at 1016-19; *$132,245.00 in U.S. Currency*, 764 F.3d at 1058-62; *Balice v. U.S. Dep't of Agriculture*, 203 F.3d 684, 699 (9th Cir. 2000).

The only Ninth Circuit case to consider an Eighth Amendment challenge to a willful FBAR penalty—in fact, the only case decided by any court of appeals—held that the penalty was not excessive. *See United States v. Bussell*, 699 F. App'x 695, 696 (9th Cir. 2017) (willful FBAR penalty of "approximately $1.2 million" was "not grossly disproportional to the harm she caused because Bussell defrauded the government and reduced public revenues"). Numerous district courts have likewise upheld FBAR penalties against Eighth Amendment challenges. *See, e.g.*, *Collins*, 2021 WL at 456962 *9-11; *Garrity*, 2019 WL 1004584, at *1, *6-*9 (50% penalty); *Schoenfeld*, 344 F. Supp. 3d at 1359, 1375 (same); *Crawford v. U.S. Dept. of Treas.*, 2015 WL 5697552, at *16 (S.D. Ohio 2015) (rejecting facial challenge).

An application of the *Bajakajian* factors leads to the same conclusion in this case. As an initial matter, acts of Congress are entitled to a strong presumption of

constitutionality, *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32 (1963), and the Supreme Court emphasized in *Bajakajian* that "judgments about the appropriate punishment for an offense belong in the first instance to the legislature," 524 U.S. at 336. The courts therefore give substantial deference to legislative judgments regarding the appropriate penalty. *See $132,245.00 in U.S. Currency*, 764 F.3d at 1058.

First, the penalty imposed against Kerr falls within the range that Congress prescribed for his precise violation. A penalty imposed within legislative boundaries is presumptively proportional. *See Qwest Corp. v. Minn. Pub. Utils. Comm'n*, 427 F.3d 1061, 1069 (8th Cir. 2005); *Kelly v. U.S. EPA*, 203 F.3d 519, 524 (7th Cir. 2000); *Pharaon v. Bd. of Governors of Federal Reserve System*, 135 F.3d 148, 157 (D.C. Cir. 1998). The congressionally authorized penalty in this case raises no excessiveness concerns.

Second, Kerr falls squarely within a class of individuals targeted by the BSA: Americans who avoided tax obligations by hiding assets in undisclosed foreign accounts. *See* H.R. Rep. No. 91-975, at 12-13; S. Rep. No. 108-192, at 108 (2003).

Third, although Kerr seeks to downplay the seriousness of his actions and attendant harm, those factors weigh against a finding of excessiveness. Congress enacted the Bank Secrecy Act to combat crimes, including tax evasion, securities violations, and fraud, H.R. Rep. No. 91-975, at 12, and increased the maximum FBAR penalty because improving compliance was "vitally important," S. Rep. No. 108-192, at 108. *See Pimentel v. L.A.*, 974 F.3d 917, 924 (9th Cir. 2020) (harms other than monetary effect are relevant to assessing proportionality). In addition, because Kerr acted willfully, his actions fall into the more serious category of FBAR violations.

Congress based the willful FBAR penalty on the account balance and not the tax loss, reflecting a judgment that the harm to the tax system increases with larger balances concealed offshore. *See United States v. Chaplin's, Inc.*, 646 F.3d 846, 852 (11th Cir. 2011) (Congress "can distill the monetary value society places on harmful conduct"). Thus, recognizing that the full harm to the United States from hidden accounts—

including the costs of uncovering them—may be difficult to ascertain, Congress reasonably chose to use a formula based on the account's balance.

Even if it were appropriate to correlate the FBAR penalty amount with the sustained tax loss for Eighth Amendment purposes, the burden to prove that there was not a tax loss is on Kerr. *$132,245.00 in U.S. Currency*, 764 F.3d at 1058. Kerr falls far short of that mark. Although Kerr alleges on page 26 of his motion that his undisclosed Swiss accounts did not cost the Treasury lost tax revenue, he offers zero evidence in support. Instead, all Kerr points to are (1) a statement by the sentencing judge in his criminal case that the prosecution had not proven any tax loss for sentencing purposes, and (2) a stipulated decision from the United States Tax Court that Kerr did not owe income tax deficiencies for 2007 and 2008. Those may appear at first blush to support Kerr's claim. However, neither does.

Kerr's sentencing judge did not affirmatively rule that there was no tax loss. All the judge said was that the prosecution had not proven a tax loss by clear and convincing evidence at the sentencing hearing. Furthermore, "it is presumptively improper for a court to give preclusive effect to the findings of a sentencing court during subsequent civil litigation." *Maciel v. Comm'r*, 489 F.3d 1018, 1023 (9th Cir. 2007). The same goes for the stipulated decision from the Tax Court: "[A] Tax Court decision, entered pursuant to the parties' stipulations, [does] not accomplish an 'estoppel by judgment,' i.e., it [has] no issue-preclusive effect." *Arizona v. California*, 530 U.S. 392, 415 (2000). The decision was *res judicata* only in that it precluded the United States from later attempting to collect the 2007–2008 income tax deficiencies. *See id.* But it does not preclude the United States from factually asserting that there was a tax deficiency for purposes of an excessive-fines argument. And when one looks behind the curtain of the parties' prior stipulation in Tax Court, the reason why it is not afforded any preclusive effect is clear.

When it signed the Tax Court stipulation, the IRS informed Kerr's attorney—the same attorney representing Kerr in this lawsuit—that the IRS was not conceding based on any of Kerr's substantive claims. (Cox. Decl. ¶¶ 8–10, Exhibit 2.) The IRS only agreed to

concede the income tax deficiencies because of a procedural argument Kerr raised

concerning the Federal Rules of Evidence. (*Id.*) Thus, the issue as to whether Kerr's

undisclosed Swiss accounts actually created a tax loss has never been decided.

Accordingly, Kerr's reliance on the Tax Court stipulation on pages 12 and 26 of his

motion as proof that Kerr owed "zero" tax deficiency is misplaced.

Another incorrect statement is Kerr's characterization on page 26 of his motion of

the penalties as "1.5 times the amounts in the accounts." From the available bank records,

the highest aggregate balance during 2007 was at least $5,822,506. (*See* ECF No. 46 at

14.) The original penalty for that year, $2,911,251, was 50% of this amount. And the

United States' concession in its motion brings the number down to 33%. Similarly, the

original penalty for 2008, $889,719, was 53% the highest known aggregate balance that

year, $1,665,985. And the United States' proposed reduction brings it down to 20.7%.

Lastly, the civil penalty at issue is not excessive when compared with the criminal

sanctions for Kerr's actions. Those sanctions include imprisonment of up to five years; a

fine of up to $250,000 for an FBAR offense standing alone (and double that if there are

other violations or a pattern of illegal activity); and a 10-year bar from serving on the

board of directors of a United States financial institution. 31 U.S.C. §§ 5321(f) and (g)

and 5322(a)–(b).[5] The criminal penalties, in other words, include a substantial fine in

addition to the prospect of a prison term—a consequence arguably much more serious

than even the maximum civil penalty permitted by § 5321(a)(5)(C).

The *Bajakajian* factors therefore require rejecting Kerr's Eighth Amendment

claim.

*4.    The regulation capping the penalty at $100,00 was superseded by Congress.*

From 1986 until 2004, the maximum penalty for willful FBAR violations per year

was "the greater of" $25,000 or "an amount (not to exceed $100,000) equal to the balance

in the account at the time of the violation." 31 U.S.C. § 5321(a)(5)(B)(ii) (2003). In 1987,

---

[5] Congress amended § 5321 in 2020 to add subsections (f) and (g). Pub. L. 116-283 §§ 6309–10.

the Treasury Department issued a regulation reflecting that statutory maximum. 31 C.F.R. § 103.47(g)(2) (1987), *renumbered as* 31 C.F.R. § 103.57(g)(2) (1999), *renumbered as* 31 C.F.R. § 1010.820(g) (2010). But in 2004, Congress amended the statute to state that "the maximum penalty" for willful FBAR violations per year "shall be increased to the greater of" $100,000 or 50% of "the balance in the account at the time of the violation." 31 U.S.C. § 5321(a)(5)(C) & (D)(ii).

Kerr seeks to rely on the pre-amendment regulation to cap his penalty at $100,000. Yet, the 2004 amendment necessarily superseded the pre-amendment regulation, which reiterated the 1987 version of § 5321(a)(5)(B)(ii). "It is well-settled that when a regulation conflicts with a subsequently enacted statute, the statute controls and voids the regulation." *Farrell v. United States*, 313 F.3d 1214, 1219 (9th Cir. 2002). Applying that principle, the Federal, Second, Fourth, and Eleventh Circuits have held that the 2004 amendment superseded the 1987 regulation. *United States v. Kahn*, No. 19-3920, 2021 WL 2931305 (2d Cir. July 13, 2021); *United States v. Rum*, 995 F.3d 882, 892 (11th Cir. 2021); *United States v. Horowitz*, 978 F.3d 80, 90–91 (4th Cir. 2020); *Norman v. United States*, 942 F.3d 1111, 1117–18 (Fed. Cir. 2019). So has the only district court in the Ninth Circuit to consider the issue. *See United States v. Cohen*, No. CV 17-1652-MWF (JCX), 2019 WL 4605709, at *3 (C.D. Cal. Aug. 6, 2019). As Kerr notes, two district courts outside the Ninth Circuit went the opposite way, holding that the regulation was not superseded. *See United States v. Colliot*, No. AU-16-CA-01281-SS, 2018 WL 2271381, at *2 (W.D. Tex. May 16, 2018); *United States v. Wahdan*, 325 F. Supp. 3d 1136, 1138–41 (D. Colo. 2018). Even so, they were the first two courts to consider the issue, and every court since then has disagreed. This Court should therefore follow the current consensus of the courts that the regulation was superseded by statute. Because the 2004 amendment mandated a new maximum willful FBAR penalty, the administrative rule setting a different maximum penalty is void.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONCLUSION

For the foregoing reasons, the Court should deny Kerr's motion for partial summary judgment and grant the United States' motion for summary judgment.

Dated: July 26, 2021.

DAVID A. HUBBERT
Acting Assistant Attorney General

*/s/ Matthew Uhalde*
JEREMY N. HENDON
CHARLES J. BUTLER
MATTHEW P. UHALDE
Trial Attorneys, Tax Division
U.S. Department of Justice

ANTHONY MARTIN
Acting United States Attorney
*Of Counsel*

*Attorneys for the United States of America*

**CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED that service of the foregoing has been made this 26th day of July, 2021 via the Court's CM/ECF system to:

Brandon A. Keim                    bkeim@frgalaw.com, mnorthcott@frgalaw.com

*/s/ Matthew Uhalde*
MATTHEW P. UHALDE
Trial Attorney, Tax Division
U.S. Department of Justice