1

Brandon A. Keim (028831)
bkeim@frgalaw.com

2

**Frazer Ryan Goldberg & Arnold LLP**
1850 North Central Avenue, Suite 1800

3

Phoenix, AZ 85004
(602) 200-7399

4

*Attorneys for Defendant Stephen M. Kerr*

5

6

7

8

## IN THE UNITED STATES DISTRICT COURT

9

## FOR THE DISTRICT OF ARIZONA

10

11

United States of America,

Case No. 2:19-cv-05432-DJH

12

Plaintiff,

13

v.

**DEFENDANT'S RESPONSE TO**
**PLAINTIFF'S MOTION FOR**

14

**SUMMARY JUDGMENT**

15

Stephen M. Kerr,

16

Defendant.

17

18

Defendant Stephen M. Kerr ("Kerr") responds to the United States' motion for

19

summary judgment. The United States is not entitled to summary judgment as a matter of

20

law because (1) the Administrative Procedure Act ("APA") requires that the Court remand

21

the FBAR penalties to the IRS for additional investigation or explanation because the

22

United States concedes that the IRS's penalty assessment was illegal, (2) the United States'

23

proposed penalties are still wrong, (3) Kerr did not have a reporting requirement for the

24

Placeholder Account because he did not have the requisite financial interest in or authority

25

over the account, (4) the penalties are punitive in nature and excessive in violation of the

26

Eighth Amendment, and (5) the penalties exceed the $100,000 cap under 31 C.F.R. §

27

1010.820(g). Kerr requests that the Court remand the action to the IRS.

28

This response is supported by the following Memorandum of Points and Authorities and the attached exhibits filed concurrently herewith.

## MEMORANDUM OF POINTS AND AUTHORITIES

**A.     The Court must remand certain FBAR penalties to the IRS for additional investigation or explanation because the United States concedes that the IRS's FBAR penalty assessments were overstated by at least 40%, or nearly $1.6 million.**

The United States concedes for the first time in its motion that the IRS's FBAR penalty assessments were illegal, resulting in an overstatement of at least 40%, or nearly $1.6 million based on the information in the administrative record. (Pl.'s Mot. for Summ. J. 2, 14-15.) The United States' concession comes more than seven years after the IRS determined Kerr's FBAR penalties, nearly four years after it assessed Kerr's FBAR penalties and began collection efforts, including the assertion of oppressive late payment penalties, and nearly two years after the United States filed this lawsuit. Now the United States requests that the Court rubber-stamp its recalculation of FBAR penalties and enter judgment rather than remand the matter to the IRS, as required by the APA, because it will "conserve limited agency and party resources." (Pl.'s Mot. for Summ. J. 16.) The Court should reject the United States' invitation to substitute the Court's judgment for that of the IRS, and instead set aside the FBAR penalty assessments, and remand the action to the IRS for further proceedings.

Judicial review of agency action is governed by the APA, and a court shall set aside an agency's decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). If the reviewing court cannot find substantial evidence in the record, it should "not compensate for the agency's dereliction by undertaking its own inquiry into the merits, but should remand to the agency for further proceedings." *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 603 (9th Cir. 2014). If the decision of the agency is not sustainable on the administrative record, then the decision must be vacated and the matter remanded for

further consideration. *Fed. Power Comm'n v. Transcon. Gas Pipe Line Corp.*, 423 U.S. 326 (1976). "When a court determines that an agency's action failed to follow Congress's clear mandate the appropriate remedy is to vacate that action." *Cal. Wilderness Coalition v. U.S. Dep't of Energy*, 631 F.3d 1072, 1095 (9th Cir. 2011); *see also United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019) ("The ordinary practice is to vacate unlawful agency action."); *Gen. Chem. Corp. v. United States*, 817 F.2d 844, 848 (D.C. Cir. 1987) ("The APA requires us to vacate the agency's decision if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' ....").

There is no longer a question of whether the IRS's FBAR penalty assessments are sustainable on the administrative record because "[a]s the United States concedes, the IRS overestimated the statutory maximum penalty from the evidence available to it by $1,575,396." (Pl.'s Mot. For Summ. J. 2.) The IRS's FBAR penalty assessments must be set aside, and remand for new agency action is the only option for a new penalty to be assessed or not assessed.

The United States argues that "remand is unnecessary." The United States cites *United States v. Schwarzbaum*, 2020 WL 2526500, at *1 (S.D. Fla. May 18, 2020), as its sole authority for its suggestion that this Court can substitute its judgment for that of the IRS and avoid a remand. The United States' reliance on *Schwarzbaum* is misplaced because that court held that the remand request was not timely. *Id.* ("[T]he [remand] argument has not been properly raised and the Court will not consider it at this late stage."). But even if the *Schwarzbaum* court had addressed the remand argument in the order cited by the United States (it did not), it would be of no consequence because that court ultimately held in a subsequent order that "any error in the Government's calculation is harmless," *United States v. Schwarzbaum, No*. 18-CV-81147, 2020 WL 5076979, at *3 (S.D. Fla. Aug. 27, 2020), and therefore, remand was not necessary.

3

The most recent court opinion to address an arbitrary and capricious FBAR penalty assessment concluded, in accordance with Supreme Court precedent, that remand to the IRS was necessary. *United States v. Gentges*, No. 18-CV-7910 (KMK), 2021 WL 1222764, at *16 (S.D.N.Y. Mar. 31, 2021). Despite that the United States cited the case in its motion for the proposition that the penalty must be calculated as of June 30 (something that the IRS did not do in Kerr's case because the IRS relied on December 31 balances), it failed to mention the court's decision to remand.  Nevertheless, the Supreme Court has provided clear direction, and there is no reason to rely on non-precedential opinions like *Schwarzbaum* or *Gentges.*

In the Supreme Court's recent opinion in *Department of Homeland Security v. Regents of the University of California*, —— U.S. ——, 140 S. Ct. 1891, 207 L.Ed.2d 353 (2020), it reiterated that "[i]t is a 'foundational principle of administrative law' that judicial review of agency action is limited to 'the grounds that the agency invoked when it took the action.'" *Id.* at 1907. The APA "directs that agency actions be 'set aside' if they are 'arbitrary' or 'capricious.'" *Id.* (quoting 5 U.S.C. § 706(2)(A)). "Under this narrow standard of review, . . . a court is not to substitute its judgment for that of the agency, but instead to assess only whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* (internal citations and quotations omitted). Upon remand, an agency has two options: (1) offer "a fuller explanation of the agency's reasoning *at the time of the agency action*" or (2) "'deal with the problem afresh' by taking *new* agency action." *Id.* at 1907-08 (internal citations and quotations omitted).

Despite clear direction from the Supreme Court, the United States hopes that this Court will simply enter judgment against Kerr in a reduced amount. The United States contends that entering judgment will "conserve limited agency and party resources," (Pl.'s Mot. for Summ. J. 16), and while that may be true for the United States, that is not

an exception carved out by the Supreme Court or presumably *any* court since the United States fails to cite any authority holding as much.

As the Supreme Court explained in *FEC v. Akins*, 524 U.S. 11, 25 (1998), "[i]f a reviewing court agrees that the agency misinterpreted the law, it will set aside the agency's action and remand the case – even though the agency (like a new jury after a mistrial) might later, in the exercise of its lawful discretion, reach the same result for a different reason." The Court should remand Kerr's FBAR penalty assessments to the IRS for further explanation, or new agency action.

The United States' suggestion that judgment, rather than remand, will conserve agency resources is a thinly veiled attempt to avoid what it fears most: that *new* agency action will be necessary.

The United States' concession that the IRS's FBAR penalty calculations cannot be upheld means that the first option on remand—providing further explanation for its decision—is foreclosed because there is no acceptable explanation for its failure to use the proper information that it had in its possession, or request information that it did not have in its possession, as its own procedures require. The only remaining option for the IRS upon remand is *new* agency action. *Regents*, 140 S. Ct. at 1907-08. Although not yet ripe for this Court's consideration because there has not yet been any new IRS action, FBAR penalty assessments are subject to a six-year statute of limitations under 31 U.S.C. §§ 5321(b)(1) and (b)(6), *see also* United States v. Bussell, 699 Fed. Appx. 695, 696 (9th Cir. 2017), and the period in which the IRS could assess penalties against Kerr ran nearly three years ago on December 31, 2018 (Ex. B at USA-000883—896). The statute of limitations would have expired sooner if Kerr had not fully cooperated and provided consents to extend the statute of limitations while the IRS's Office of Appeals reviewed the IRS's penalty calculations. Kerr will challenge any new action by the IRS that runs afoul of the statute of limitations.

5

Remand will allow the IRS to determine that new assessments are appropriate, if the statute of limitations supports it (it does not), and Kerr will receive new notice and demand, and have the option to pay the assessments in a manner that avoids the substantial accrual of interest, collection costs, and penalties, which can amount to more than 30% over a two-year period. *See* 31 U.S.C. § 3717. Kerr should not be penalized with interest, collection costs, and penalties for pursing judicial review of the IRS's FBAR penalty assessments that the United States now concedes were illegal.

Based on the United States' concession in its motion, and the arguments appearing below in B. in relation to UBS account ending in 962, remand is appropriate as to the following FBAR penalties:[1]

| Account | Reporting Year | Penalty Date | IRS Assessment | United States' Revised | Kerr's |
|---------|----------------|--------------|----------------|------------------------|--------|
| UBS #-962 | 2007 | 6/30/2008 | $378,117 | $378,117 | $277,285 |
| UBS #-796 | 2007 | 6/30/2008 | $934,400 | $467,200 | $467,200 |
| UBS #-593 | 2007 | 6/30/2008 | $1,523,303 | $555,450 | $555,450 |
| UBS #-593 | 2008 | 6/30/2009 | $485,597 | $100,000 | $100,000 |
| Pictet & Cie #-531 | 2008 | 6/30/2009 | $204,122 | $45,229 | $45,229 |

**B.** **The United States' revised penalties are still too high because the United States fails to consider the value of stock held in account 962 as of June 30, 2008, without explanation, and because it seeks to increase the 2007 penalty for account 531 despite that the time to assess an increased penalty has run.**

As explained above, because the United States conceded that the IRS's FBAR penalties are illegal, remand to the IRS is required. Nevertheless, the revised penalties

---

[1] Although the United States asserts in its motion that the penalty for Pictet & Cie account ending in 531 should be increased for reporting year 2007, it did not request that the Court remand that assessment to the IRS, as it must, and therefore it is not included here. Kerr disputes that the penalty should be increased as addressed below in B.

that the United States asserts in its motion are still too high as it relates to two accounts, as shown below:

| Account | Reporting Year | Penalty Date | IRS Assessment | United States' Revised | Kerr's | Diff. |
|---------|----------------|--------------|----------------|------------------------|--------|-------|
| UBS #-962 | 2007 | 6/30/2008 | $378,117 | $378,117 | $277,285 | $100,832 |
| Pictet & Cie #-531 | 2007 | 6/30/2008 | $250,761 | $438,593 | $250,761 | $187,832 |
| **Total Penalties** | | | $3,800,970 | $2,225,574 | $1,936,910 | $288,664 |

### UBS 962

The United States contends that it is indisputable that at the time it made its assessment, it did not have a June 30, 2008 balance for UBS account ending in 962. Although it is indisputable that the administrative record does not contain a statement reflecting the balance in UBS account ending in 962 as of June 30, 2008, it is also indisputable that the IRS's revenue agent, Ms. Mead, relied solely on the information "provided by the [IRS's] criminal investigation division," (Ex. A at 34:13-16) and that she "never requested any additional information," (Ex. A at 34:10-12), as directed by IRS policy, because she was "requested by [IRS] criminal investigations not to contact the taxpayer," (Ex. A at 17:5-12). Ms. Mead's failure to request information was an unexplained deviation from the IRS's policy directives that require that revenue agents informally request statements from taxpayers and other sources, and then formally request them by issuing summonses. (Ex. B at USA-000899—900.) Ms. Mead testified that she did neither after direction from the IRS's Criminal Investigation division that she not contact Kerr. (Ex. A at 33:2-8, 33:11-14.) These deviations from IRS procedure were not typical as Ms. Mead testified that she would generally "issue a summons in an FBAR examination if after all means of obtaining bank statements were unsuccessful," and that

1    she would "request an EOI, exchange of information." (Ex. A at 16:14-20.) The IRS's

2    failure to obtain a statement reflecting the balance in UBS account ending in 962 as of

3    June 30, 2008 is its own doing, contrary to its own policy.

4        The Internal Revenue Manual does not have the force of law. *Fargo v. Comm'r.,*

5    447 F.3d 706, 713 (9th Cir. 2006). But "[i]t is a fundamental principle of administrative

6    law that an agency is bound to adhere to its own regulations." *Service v. Dulles*, 354 U.S.

7    363, 388 (1957) (stating that an agency may not "proceed without regard" to the

8    "substantive and procedural standards" it has "impose[d] upon [itself]"); *Alcaraz v.

9    I.N.S.*, 384 F.3d 1150, 1162 (9th Cir. 2004) ("Where the rights of individuals are affected,

10   it is incumbent upon agencies to follow their own procedures."); *Church of Scientology of

11   California v. United States*, 920 F.2d 1481, 1487 (9th Cir. 1990) (holding that

12   administrative agencies are required to adhere to their own internal operating

13   procedures). The IRS's revenue agent's failure to request statements necessary to perform

14   FBAR calculations is not explained in the administrative record, and the matter should be

15   remanded to the IRS for further explanation or agency action.

16       Even without a statement reflecting the balance in UBS account ending in 962 as

17   of June 30, 2008, the IRS's penalty assessment is arbitrary and capricious because the

18   IRS failed to make any effort to determine the balance as of June 30, 2008.

19       In *United States v. Gentges*, No. 18-CV-7910 (KMK), 2021 WL 1222764

20   (S.D.N.Y. Mar. 31, 2021), the IRS used a December 31 balance in lieu of a June 30

21   balance in a willful FBAR penalty calculation, like in this case, because the IRS did not

22   have the June 30 balance. *Gentges* at *15-16. The IRS argued that it used the "best

23   available information," but the court held that the IRS's policy manual required the June

24   30 account balance, and the agency's decision was an "arbitrary expedient." *Id.* The court

25   remanded the issue to the IRS for additional investigation or explanation. *Id.* *16. The

26   court distinguished the IRS's departure from "cut-and-dry instructions in its own internal

27   guidelines" that it use the June 30 balance from other cases that involved the IRS's

28

8

"substantive exercise of discretion." *Id.*, citing *United States v. Rum*, 2019 WL 3943250 (M.D. Fla. Aug. 2, 2019) (upholding IRS penalty calculation where the IRS did not apply mitigation provisions); *United States v. Williams*, 2014 WL 3746497 (E.D. Va. June 26, 2014) (upholding IRS's refusal to reduce FBAR penalties below the maximum).

The IRS's policy manual directs examiners to use the fair market "value of stock, other securities, and other non-monetary assets in an account reported on the FBAR." IRM 4.26.16.3.6 (07-01-2008). Although outside the FBAR penalty section of the IRS's policy manual, agents are directed to perform stock valuations as of a certain date using the "EstateVal" program. IRM 4.25.2.5.3.2 (08-30-2018). The IRS has utilized EstateVal to value stock since 1996. EVP System EstateVal, https://www.evpsys.com/group/estateval (last visited June 24, 2021).

IRS Revenue Agent Teresa Mead testified that she used account values as of December 31 without adjustment to calculate Kerr's FBAR penalties. (Ex. A at 45:24-25; 46:1-4; 48:14-16; 55:20-24; 74:6-9, 22-25; 75:1-4, 17-25; 76:1; 97:12-13.) Mead further testified that she was aware that the foreign accounts for which she was calculating penalties contained stock, that the statements listed the names of the stock and the number of shares of stock (Ex. A at 64:10-18), but that she made no attempt to determine the value of the stock as of June 30 (Ex. A at 64:17-19) despite being aware that she could look up the values of publicly traded stock as of a certain date, e.g., the violation date of June 30 (Ex. A at 57:19-22; 65:1-14). When Ms. Mead was asked why she did not attempt to determine the value of the stocks contained in the accounts as of June 30, she replied, "I don't recall," a phrase that she used more than 60 times throughout her deposition. (Ex. A at 64:20-21; 65:15-16.) When Ms. Mead was asked what would help her recall why she chose not to determine the value of securities using publicly available information, she responded "I don't have an answer." (Ex. A at 66:5-20.)

The statements within the IRS's possession at the time that the penalty was calculated for UBS account ending in 962 reflected five different stocks that were

purchased and sold throughout 2008. Kerr's expert, Ms. Sheri Betzer, determined that the transactions reflected on the statements within the IRS's possession could be traced to determine the number of shares on hand at June 30, 2008. Once the number of shares was determined, the trading value of the shares at June 30, 2008 could be determined using publicly available information, and the stock/account value is $544,570 at June 30, 2008. (Ex. C at Ex. A, 4-5; Ex. B at USA-000971—1039.)

The United States' revised penalty for UBS account ending in 962 relies on two assumptions: (1) that the *number* of shares in the account as of December 31, 2007 remained the same as of the violation date of June 30, 2008, and (2) that the share *values* remained the same as of the violation date of June 30, 2008. Ms. Betzer's calculation more accurately relies on only one of those assumptions: that the *number* of shares remained the same. Ms. Betzer looked to publicly available information—just as the IRS should have based on its own policy—to determine the *values*. Neither the IRS in its administrative record, nor the United States in its motion, offers any explanation for the decision to make two assumptions rather than one in determining the account balance for UBS account ending in 962 as of June 30, 2008, nor do they explain the failure to follow the IRS's policy manual directive that agents use the fair market "value of stock, other securities, and other non-monetary assets in an account reported on the FBAR." IRM 4.26.16.3.6 (07-01-2008). The IRS provides tools to its agents to perform stock valuations as of a certain date, *see* IRM 4.25.2.5.3.2 (08-30-2018), and yet the administrative record fails to explain the revenue agent's decision not to properly value the stocks.

Like in *Gentges,* the IRS's failure to use the June 30 balances was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. Accordingly, the Court should remand this action to the IRS.

**Pictet & Cie 531**

The United States' revised FBAR penalties asserts that the penalty for Pictet & Cie account ending in 531 should be increased by $187,832 for reporting year 2007 because the statements that Kerr provided to the United States upon request in discovery reflect an account balance of $877,185 as of June 30, 2008. Kerr does not dispute that the balance in the account as of June 30, 2008 was $877,185, as reflected by the statements that he produced, but neither the United States in its motion or this Court are permitted to make any agency decision on behalf of the IRS. As detailed above, if the United States requests remand for the Pictet & Cie account ending in 531 (it has not made such a request), then the Court may remand the matter to the IRS for further explanation or new agency action, but it cannot substitute its judgment for that of the IRS and assess an increased penalty. *Regents*, 140 S. Ct. at 1907-08. A valid assessment by the IRS is a condition precedent to the United States' action to recover an IRS assessment. 31 U.S.C. § 5321(b)(1), (2). Because the IRS's Form 13448, Penalty Assessment Certification, shows that the IRS assessed an FBAR penalty in the amount of $250,761.00 for Pictet & Cie account ending in 531 for reporting year 2007, (Ex. 6, USA-000006), the United States' civil action to recover such assessment is limited to $250,761.00. 31 U.S.C. § 5321(b)(2). Any additional FBAR penalty assessment against Kerr for 2007 is barred by the six-year statute of limitations under 31 U.S.C. §§ 5321(b)(1) and (b)(6), which ran on December 31, 2018 (Ex. B at USA-000883—896).

**C.   The IRS's penalty calculations exceed the FinCEN regulations maximum of $100,000.**

The implementing FBAR regulation caps the penalty at $100,000. 31 CFR § 1010.820(g). The IRS has consistently taken the position that 31 CFR § 1010.820(g) is *void ab initio* since 2004, when Congress increased the willful penalty (American Jobs Creation Act of 2004, Pub. L. No. 108-357, 118 Stat. 1418 (2004)). Two courts have held

that that the regulation controls. *See United States v. Wadhan*, 325 F. Supp. 3d 1136, 1138-41 (D. Colo. 2018); *United States v. Colliot*, 2018 WL2271381 at *2-3 (W.D. Tex. May 16, 2018). While there are no controlling cases in the Ninth Circuit, most courts to address the issue have concluded that the 2004 amendment to the statute superseded the regulation. *See United States v. Rum*, 995 F.3d 882 (11th Cir. 2021); *United States v. Horowitz*, 978 F.3d 80, 91 (4th Cir. 2020); *Norman v. United States*, 942 F.3d 1111 (Fed. Cir. 2019); *Kimble v. United States*, 141 Fed. Cir. 373, 388 (2018); *United States v. Park*, 389 F. Supp. 3d 561, 571-74 (N.D. Ill. 2019); *United States v. Toth*, No. 15-CV-13367-ADB, 2020 WL 5549111, at *5 (D. Mass. Sept. 16, 2020); *United States v. Shoenfeld*, 2019 WL 2603341 at *4 (M.D. Fla. June 25, 2019); *United States v. Garrity*, 2019 WL 1004584 at 2 (D. Conn. Feb. 28, 2019). The $100,000 cap has not been amended or rescinded despite that the regulation has been amended for other purposes as recently as 2016. 81 Fed. Reg. 42503 (June 30, 2016). Furthermore, as the dissent points out in the Second Circuit's recent opinion in *United States v. Kahn*, No. 19-3920, 2021 WL 2931305, at *10 (2d Cir. July 13, 2021), "the 2004 amendment creates no conflict with the governing regulation," because the statute *allows* rather than *requires* the IRS to impose a penalty greater than $100,000. Accordingly, any civil penalty is limited to half the amount in the account at the time of the violation but capped at $100,000, and the Court should remand this action to the IRS to account for the $100,000 cap.

**D.      FBAR penalties that forfeit the entire amounts in the accounts are punitive in nature and excessive in violation of the Eighth Amendment.**

The Eighth Amendment of the United States Constitution prohibits the government from imposing "excessive fines." U.S. Const. amend. VIII. As more fully set out in Kerr's Motion for Partial Summary Judgment, Kerr's FBAR penalties are fines that are grossly disproportionate to the conduct involved—a mere failure to report—and the punishment is unconstitutional under the Excessive Fines Clause of the Eighth

Amendment after weighing the relevant factors and comparing the FBAR penalties to the additional tax due—zero—and considering that the penalties exceed the amounts in the accounts as of June 30, 2009 ($1,362,893). The Court should reduce the FBAR penalties to 50% of the account balances as of June 30, 2009, or $681,446.

**E.    Kerr did not have a reporting requirement for the Placeholder Account because he did not have the requisite financial interest in or authority over the account.**

The United States, as the moving party, bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Kerr, as the nonmoving party, must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation and citation omitted). The court must examine the evidence in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654 (1962). The court may not weigh evidence or make credibility determinations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). Any doubt as to the existence of any issue of material fact requires denial of the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The United States asserts that Kerr had the requisite financial interest or signature or other authority in the Placeholder Account because (1) his prior criminal conviction determined as much for the other Swiss accounts, and therefore, it should follow that the same is true for the Placeholder Account, and (2) UBS records and an email from Rusch suggest that he had an interest in, or control over, the account. But this Court already determined that the jury in Kerr's criminal case "did not necessarily decide[] that Mr.

13

Kerr *willfully* failed to file an FBAR on this placeholder account," because the account was not listed in the Indictment, and the jury was not instructed to make a decision with regard to the "Placeholder Account." The United States' suggestion that the criminal conviction determined Kerr's reporting requirement for the Placeholder Account is wrong. And Kerr's testimony, combined with reliability issues related to the UBS documents, is sufficient to overcome the United States' motion.

The FBAR regulations require that a U.S. person report a foreign corporation's interest in a foreign bank account, but only where they have more than 50 percent of the voting power or total value of shares in the entity. 31 C.F.R. § 1010.350(e)(2)(ii). Kerr testified that he understood that he had less than a five percent interest in Red Rock, and that he acquired the shares through stock that he sent to Rusch (Ex. D at 206:1-14, 209:7-15, 210:20-25, 211:1-6, 277:23-25, 278:1-3). Kerr testified that Rusch had "all the power," that Kerr opened all the accounts through his fiduciaries, and that Kerr was merely a five percent owner of Red Rock (Ex. D at 211:7-25, 212:1-10). Kerr was not aware of UBS accounts opened in the name of Red Rock. (Ex. D at 212:15-20). Kerr did not provide any instructions to Rusch with respect to the stocks provided to Rusch (Ex. D at 212:25, 213:1-12). Kerr never received any UBS bank statements, or other bank documents in the name of Red Rock from UBS, Rusch, or through online access (Ex. D at 213:13-25). Kerr did not know what happened to the Placeholder Account, whether it was separate and apart from other accounts, or where the money went. (Ex. D at 228:7-17) Kerr testified that he did not wire 100,000 Swiss francs to UBS for the Placeholder Account (Ex. D at 201:8-11), that he did not know who would have wired such funds (Ex. D at 201:12-13). Rusch assured Kerr that he was complying with all U.S. and Swiss tax laws (Ex. D at 226:11-21), and Kerr understood that as long as his ownership interest was less than five percent, he did not have a reporting requirement, and he never had any reason to believe that he owned more than a five percent interest in any foreign entity created by Rusch (Ex. D at 278:4-8, 279:3-17). Rusch did not advise Kerr to file an

FBAR for any account (Ex. D at 279:21-23), and if he had been advised to file one, he would have (Ex. D at 279:24-25, 280:1-2). Kerr understood that Rusch's expertise was in international tax matters, and Kerr relied on Rusch to determine whether he had an FBAR filing requirement (Ex. D at 280:6-15). Rusch informed Kerr that everything was compliant from an FBAR standpoint (Ex. D at 280:16-24).

Kerr's testimony, which must be believed in addressing this motion, *see Leslie*, 198 F.3d at 1159, establishes that he did not have the requisite financial interest in or authority over the account because (1) he was not an account holder, signor, or beneficial owner, (2) he did not have more than 50 percent of the voting power or total value of shares in the entity account holder and beneficial owner, Red Rock, and (3) the anti-avoidance rule does not apply to Kerr (although it likely applies to Rusch).

The UBS bank documents that the United States relies on are unreliable. The UBS bank documents indicate that Kerr was married to Margaret Kerr in 1967 (Ex. 27, 10 Bates 2226_0175), but Kerr testified that he married Margaret on October 23, 1976, and that he would not forget that date (Ex. D at 281:18-25). Further, the UBS bank documents also indicate that Kerr had two children, despite that he had three children, a fact that he would not forget (Ex. D at 281:9-17). Kerr's testimony establishes that the UBS bank documents are unreliable at least as it relates to proving that Kerr a requirement to report the Placeholder Account on an FBAR.

Genuine issues of material fact exist as it relates to Kerr's interest in the Placeholder Account and therefore the Court should deny the United States' motion as it relates to the assertion of the $40,985 willful penalty for the Placeholder Account.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CONCLUSION**

Based on the foregoing, this Court should deny the United States' Motion for Summary Judgment.

RESPECTFULLY SUBMITTED this this 26th day of July, 2021.

*/s/ Brandon A. Keim*
Brandon A. Keim (028831)
**FRAZER RYAN GOLDBERG & ARNOLD LLP**
1850 N. Central Ave, Suite 1800
Phoenix, AZ 85004
Phone: 602-200-7399; Fax: 602-200-7339
E-mail: bkeim@frgalaw.com

*Attorneys for Defendant*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF EXHIBITS**

The following table of exhibits is provided in accordance with the Court's Rule 16 Scheduling Order:

| Exhibit No. | Title |
|---|---|
| A | Teresa Mead deposition transcript |
| B | Examiner's workpapers |
| C | Declaration of Sheri L. Betzer |
| D | Stephen Kerr deposition transcript |

1

**CERTIFICATE OF SERVICE**

2

    IT IS HEREBY CERTIFIED that service of the foregoing is made this 26th

3

day of July, 2021, via the Court's ECF system to all counsel of record.

4

5

                                    /s/ Brandon A. Keim
                                    BRANDON A. KEIM

6

                                    *Attorneys for Defendant*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28