Brandon A. Keim (028831)
bkeim@frgalaw.com
**Frazer Ryan Goldberg & Arnold LLP**
1850 North Central Avenue, Suite 1800
Phoenix, AZ 85004
(602) 200-7399

*Attorneys for Defendant Stephen M. Kerr*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | Case No. 2:19-cv-05432-DJH |
| Plaintiff, | |
| v. | **Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Partial Summary Judgment** |
| Stephen M. Kerr, | |
| Defendant. | |

### I.  INTRODUCTION

As explained in the opening motion, Kerr requests that this Court remand certain FBAR penalties to the IRS for additional investigation or explanation, as it must under the APA, because the IRS's decision related to Kerr's FBAR penalties was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. The United States' response makes key concessions, but it misconstrues Kerr's positions and ignores Supreme Court precedent.

### II.  ARGUMENT

**A.   The Court must remand FBAR penalties to the IRS because the United States concedes that the IRS's FBAR penalty assessments were overstated by at least 40%, or nearly $1.6 million.**

**1.     The United States' concessions require remand.**

The United States conceded for the first time in its Motion for Summary Judgment that the IRS's FBAR penalty assessments were illegal, resulting in an overstatement of at least 40%, or nearly $1.6 million based on the information in the administrative record. (Pl.'s Mot. for Summ. J. 2, 14-15.) The United States' concession comes more than seven years after the IRS determined Kerr's FBAR penalties, nearly four years after it assessed Kerr's FBAR penalties and began collection efforts, including the assertion of oppressive late payment penalties, and nearly two years after the United States filed this lawsuit. Now the United States requests that the Court rubber-stamp the United States' recalculation of FBAR penalties and enter judgment rather than remand the matter to the IRS, as required by the APA. The United States alleges that the Court can decide as a matter of law where the IRS erred, and the amount of its error, and therefore, the Court should simply reduce the penalty and enter judgment, rather than remand. But the United States fails to cite any authority for its proposition and refuses to acknowledge the clear direction from the Supreme Court to the contrary. As the Supreme Court explained in *FEC v. Akins*, 524 U.S. 11, 25 (1998), "[i]f a reviewing court agrees that the agency misinterpreted the law, it will set aside the agency's action and remand the case – even though the agency (like a new jury after a mistrial) might later, in the exercise of its lawful discretion, reach the same result for a different reason." The Court must remand Kerr's FBAR penalty assessments to the IRS for further explanation, or new agency action.

Kerr has not conceded that the reduced penalties sought by the United States are appropriate, as the United States asserts. Kerr has always maintained that the IRS's decision was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, and that remand is required. (Def.'s Mot. for Parital Summ. J. at 1, 14, 20, 23, 25.) The United States' reduced penalties are still too high, as addressed below and further explained in Kerr's response to the United States' motion. (Def.'s Resp. to Pl.'s Mot. for Summ. J. at 6-11.)

The Court should reject the United States' invitation to substitute the Court's judgment for that of the IRS, and instead set aside the FBAR penalty assessments, and remand the action to the IRS for further proceedings. Based on the United States' concession in its motion, and the arguments appearing below in relation to UBS account ending in 962, remand is appropriate as to the following FBAR penalties:

| Account | Reporting Year | Penalty Date | IRS Assessment | United States' Revised | Kerr's |
|---|---|---|---|---|---|
| UBS #-962 | 2007 | 6/30/2008 | $378,117 | $378,117 | $277,285 |
| UBS #-796 | 2007 | 6/30/2008 | $934,400 | $467,200 | $467,200 |
| UBS #-593 | 2007 | 6/30/2008 | $1,523,303 | $555,450 | $555,450 |
| UBS #-593 | 2008 | 6/30/2009 | $485,597 | $100,000 | $100,000 |
| Pictet & Cie #-531 | 2008 | 6/30/2009 | $204,122 | $45,229 | $45,229 |

**2.      The IRS failed to follow its own procedures.**

The United States asserts that Kerr cannot argue that the IRS should have obtained more evidence. The United States is wrong. The IRS is bound to adhere to its own policies and procedures, and if that includes information gathering, as it does here, then it is an abuse of discretion for the IRS to fail to gather such information.

"It is a fundamental principle of administrative law that an agency is bound to adhere to its own regulations." *Service v. Dulles*, 354 U.S. 363, 388 (1957); *Alcaraz v. I.N.S.*, 384 F.3d 1150, 1162 (9th Cir. 2004) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures."); *Church of Scientology of California v. United States*, 920 F.2d 1481, 1487 (9th Cir. 1990). The IRS failed to determine the foreign account values as of June 30, 2008 and June 30, 2009, the dates of the violations, and the IRS's use of foreign account values on dates other than June 30

3

was not a reliable method of computing June 30, 2008 and June 30, 2009 balances and produced incorrect, and overstated amounts, as the United States now concedes.

The IRS's policy manual directs examiners that "[t]he date of a filing violation is June 30th of the year following the calendar year for which the accounts are being reported" and thus, "[t]he balance in the account at the close of June 30th is the amount to use in calculating the filing violation." IRM 4.26.16.4.5.5 (07-01-2008); *see also* IRM 4.26.16.4.5 (07-01-2008) ("[A] filing violation occurs on June 30th of the year following the calendar year to be reported."); IRM 4.26.17.5.5.1(2) (01-01-2007) ("The date of the transaction for report filing violations is June 30th of the year following the calendar year for which the foreign financial account should be reported."). The IRS's "Lead Sheets" for FBAR penalty examinations in effect when Ms. Mead calculated Kerr's FBAR penalties included twenty-nine steps. (Ex. 10 at USA-000897—911.) The IRS's twelfth step, titled "Work the FBAR case," explains to examiners that "[d]ocumenting account transactions, aggregate and maximum balances, is critical in determining penalty amounts and mitigation." (Ex. 10 at USA-000899.) The thirteenth and fourteenth steps detail Information Document Requests (IDRs) and Summonses (under both Title 26 and Tile 31) to help examiners obtain account transactions and balances. (Ex. 10 at USA-000899—900.) The thirteenth and fourteenth steps are marked "N/A" for not applicable, (Ex. 9 at 33:11-14), but the decision to deviate from the IRS's information gathering procedures is not explained anywhere in the administrative record. Indeed, the *only* evidence cited by the United States in explaining the examiner's deviation from the IRS's information gathering procedures is Ms. Mead's deposition transcript. (Pl.'s Opp'n to Def.'s Mot. for Partial Summ. J. at 2 (citing Def. Ex. 9).) But as the United States argues in its response, the Court cannot admit this extra-record evidence (Pl.'s Opp'n to Def.'s Mot. for Parital Summ. J. at 3), and that means that the United States cannot rely on it to explain the IRS's deviation from its own policies and procedures.

4

Even if the United States could rely on Ms. Mead's deposition transcript to supplement the administrative record and argue that the IRS did not abuse its discretion in deviating from its own policies and procedures, the reasons it sets forth are not credible. The United States alleges that any attempt to seek information from Kerr would have been futile because Kerr would have asserted his Fifth Amendment privilege, and that Ms. Mead did not have time to request bank records from Switzerland.

Kerr could not have asserted his Fifth Amendment privilege in response to a summons for foreign bank records because the required records doctrine precludes the target of such information requests from asserting the privilege against self-incrimination. *In re M.H.*, 648 F.3d 1067, 1079 (9th Cir. 2011) (concluding that the Fifth Amendment privilege against self-incrimination was inapplicable to Swiss bank account records based on the required records doctrine). The required records doctrine has become the IRS's weapon of choice when prosecuting taxpayers for FBAR violations and pursuing FBAR penalties. The IRS's policy manual even confirms that it will not accept the assertion of a Fifth Amendment privilege in response to a request for foreign bank records. *See* IRM 4.26.5-2 (10-03-2012) ("BSA reporting requirements do not violate 5th Amendment."). The assertion that a summons would have been futile because Kerr would have asserted his Fifth Amendment privilege is a farce, and not supported by the administrative record.

The United States asserts that the IRS did not have time to request bank records from Switzerland. This is a farce too. Ms. Mead was assigned to Kerr's FBAR penalty examination on November 5, 2013. (Ex. 6 at 1.) The IRS had until December 31, 2018 to assess Kerr's FBAR penalties because Kerr repeatedly provided consents to extend the statute of limitations on assessment. (Ex. 10 at 1-14.) The IRS had more than 5 years to request bank records from Switzerland, Kerr, or any other person, including Mr. Rusch, who was cooperating with the IRS. The assertion that the IRS lacked time to request information required by IRS policy is simply not true because it had four years, (Ex. 6 at 1; Ex. 14 at 1-4), and that explanation is not part of the administrative record.

The United States alleges that it was not an abuse of discretion for the IRS to estimate balances as of June 30 by using a December 31 balance in accordance with Internal Revenue Manual section 4.26.16.5.5.3. (Pl.'s Opp'n to Def.'s Mot. for Partial Summ. J. at 7-8.) The United States misleads the Court in citing that manual section, however, because it was not published until June 24, 2021. The United States' inclusion of a URL, and permalink, is likely because it was aware this section was just recently published, and that it is not currently part of Westlaw. The United States did not provide URL for any of its other IRM citations. IRM § 4.26.16.5.5.3 (06-24-2021) has no bearing on whether the IRS abused its discretion because it did not exist in 2017.

The IRS's failure to use the balances in the accounts at the close of June 30th, and its failure make any effort to determine such balances, was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, and remand is required. *See United States v. Gentges*, No. 18-CV-7910 (KMK), 2021 WL 1222764 (S.D.N.Y. Mar. 31, 2021) (ordering remand where IRS used December 31 balance in lieu of June 30 balance in willful FBAR penalty calculation).

### 3. The United States' penalties are still too high.

As explained above, because the United States conceded that the IRS's FBAR penalties are illegal, remand to the IRS is required. Nevertheless, the revised penalties that the United States asserts in its motion are still too high as it relates to two accounts, as shown below:

| Account | Reporting Year | Penalty Date | IRS Assessment | United States' Revised | Kerr's | Diff. |
|---|---|---|---|---|---|---|
| UBS #-962 | 2007 | 6/30/2008 | $378,117 | $378,117 | $277,285 | $100,832 |
| Pictet & Cie #-531 | 2007 | 6/30/2008 | $250,761 | $438,593 | $250,761 | $187,832 |
| **Total Penalties** | | | $3,800,970 | $2,225,574 | $1,936,910 | $288,664 |

6

Kerr more fully explains the reasons that the United States' penalties are still too high in his response to the United States' Motion for Summary Judgment. (Def.'s Resp. to Pl.'s Mot. for Summ. J. at 6-11.) In summary, the administrative record reflects that the IRS did not request a June 30, 2008 statement for UBS account ending in 962, and that it relied on a December 31, 2007 statement instead, when it could have determined the value of the account, which held five stocks, as of June 30, 2008 using publicly available information and its own EstateVal tool. When Ms. Mead was asked why she did not attempt to determine the value of the stocks contained in the accounts as of June 30, she replied, "I don't recall," a phrase that she used more than 60 times throughout her deposition (ECF No. 49-1 at 64:20-21; 65:15-16), and when asked what would help her recall why she chose not to determine the value of securities using publicly available information, she responded "I don't have an answer." (ECF No. 49-1 at 66:5-20.)

The statements within the IRS's possession reflected five different stocks that were purchased and sold throughout 2008. Kerr's expert, Ms. Sheri Betzer, determined that the transactions reflected on the statements within the IRS's possession could be traced to determine the number of shares on hand at June 30, 2008. Once the number of shares was determined, the trading value of the shares at June 30, 2008 could be determined using publicly available information, and the stock/account value is $544,570 at June 30, 2008. (ECF No. 49-3 Ex. A, 4-5; ECF No. 49-2 at USA-000971—1039.)

The United States' penalty for UBS account ending in 962 relies on two assumptions: (1) that the *number* of shares in the account as of December 31, 2007 remained the same as of the violation date of June 30, 2008, and (2) that the share *values* remained the same as of the violation date of June 30, 2008. Ms. Betzer's calculation more accurately relies on only one of those assumptions: that the *number* of shares remained the same. Ms. Betzer looked to publicly available information—just as the IRS should have done based on its own policy—to determine the *values*. The administrative record does not offer any explanation for the decision to make two assumptions rather

than one in determining the account balance for UBS account ending in 962 as of June 30, 2008, nor does it explain the failure to follow the IRS's policy manual directive that agents use the fair market "value of stock, other securities, and other non-monetary assets in an account reported on the FBAR." IRM 4.26.16.3.6 (07-01-2008). The IRS provides tools to its agents to perform stock valuations as of a certain date, *see* IRM 4.25.2.5.3.2 (08-30-2018), and yet the administrative record fails to explain the revenue agent's decision not to properly value the stocks.

The United States' revised FBAR penalties asserts that the penalty for Pictet & Cie account ending in 531 should be increased by $187,832 for reporting year 2007 because the statements that Kerr provided to the United States upon request in discovery reflect an account balance of $877,185 as of June 30, 2008. Kerr does not dispute that the balance in the account as of June 30, 2008 was $877,185, as reflected by the statements that he produced, but neither the United States in its motion or this Court are permitted to make any agency decision on behalf of the IRS. As detailed above, if the United States requests remand for the Pictet & Cie account ending in 531 (it has not made such a request), then the Court may remand the matter to the IRS for further explanation or new agency action, but it cannot substitute its judgment for that of the IRS and assess an increased penalty. *Regents*, 140 S. Ct. at 1907-08. A valid assessment by the IRS is a condition precedent to the United States' action to recover an IRS assessment. 31 U.S.C. § 5321(b)(1), (2). Because the IRS's Form 13448, Penalty Assessment Certification, shows that the IRS assessed an FBAR penalty in the amount of $250,761.00 for Pictet & Cie account ending in 531 for reporting year 2007, (ECF No. 46-36 at 2-6,), the United States' civil action to recover such assessment is limited to $250,761.00. 31 U.S.C. § 5321(b)(2). The United States' assertion that the penalty assertion is one amount per year is plainly wrong and contradicted by the IRS's assessment record. Any additional FBAR penalty assessment against Kerr for 2007 is barred by the six-year statute of limitations

under 31 U.S.C. §§ 5321(b)(1) and (b)(6), which ran on December 31, 2018. (Ex. 10 at 1.)

**B.     The IRS's penalty exceeds the FinCEN regulations maximum of $100,000.**

The implementing FBAR regulation caps the penalty at $100,000. 31 CFR § 1010.820(g). As the dissent points out in the Second Circuit's recent opinion in *United States v. Kahn*, No. 19-3920, 2021 WL 2931305, at *10 (2d Cir. July 13, 2021), "the 2004 amendment creates no conflict with the governing regulation," because the statute *allows* rather than *requires* the IRS to impose a penalty greater than $100,000. Any civil penalty is limited to half the amount in the account at the time of the violation but capped at $100,000, and the Court should remand this action to the IRS.

**C.     FBAR penalties that forfeit the entire amounts in the accounts are punitive in nature and excessive in violation of the Eighth Amendment.**

The United States cites *Bajakajian* for its assertion that civil penalties are "not a punishment if it 'serve[s] the remedial purpose of compensation the Government for a loss.'" (Pl.'s Opp'n to Def.'s Mot. for Partial Summ. J. at 10.) But nothing in the *Bajakarjian* opinion supports such an assertion, and the page that the United States provides references the government's rejected argument. Both *Austin* and *Bajakajian* establish that a civil penalty escapes Eighth Amendment scrutiny only if it serves solely a remedial purpose. *See Austin v. United States*, 509 U.S. 602, 610 (1993); *United States v. Bajakajian*, 524 U.S. 321, 328 (1998); *see also United States v. Bussell*, 2015 WL 9957826 (C.D. Cal. 2017); *United States v. Garrity*, 2019 WL 1004584 (D. Conn. Feb. 28, 2019).

The United States asserts that *Austin* does not apply because it involved *in rem* civil forfeitures rather than an *in personam* civil fine at issue here. But the Eighth Circuit would not have questioned whether the Eighth Amendment applied if it had been an action *in personam* because in such actions the guilt or innocence of the property owner is relevant, unlike an action *in rem*. *United States v. One Parcel of Prop. Located at 508*

*Depot St., Garretson, Minnehaha Cty., S.D.*, 964 F.2d 814, 817 (8th Cir. 1992), *rev'd sub nom. Austin v. United States*, 509 U.S. 602 (1993). The concurring opinion in *Austin* notes that "it is a much closer question whether statutory *in rem* forfeitures, as opposed to *in personam* forfeitures, meet" the requirement of punishment. *Austin*, 509 U.S. at 624 (Scalia, J., concurring). The United States' reliance on "the technical distinction between proceedings *in rem* and proceedings *in personam* . . . would be misplaced." *Id.* at 616 n.9.

The United States' reliance on *Helvering v. Mitchell*, 303 U.S. 391, 401 (1938), for its assertion that all civil tax penalties are remedial is misplaced. As the United States is aware, an FBAR penalty is not a civil tax penalty. Civil tax penalties are calculated based on tax due, and there can be no dispute that they are remedial. *See, e.g.* I.R.C. §§ 6662 (20% of tax for negligence), 6663 (75% of tax for fraud). FBAR penalties are not based on tax due, and if they were, in this case, the penalty would be zero.

In *Bajakajian*, the Supreme Court held that a sanction is a punishment if it is "imposed at the culmination of a criminal proceeding" and requires "conviction of an underlying" crime. *Id.* at 328. Those conditions are present here—Kerr was convicted of willfully violating FBAR requirements, and the United States relies on that conviction in this case. There is no doubt that the IRS's willful FBAR penalty asserted against Kerr is subject to Eighth Amendment scrutiny in this case.

Like in *Bajakajian*, Kerr's violation is solely a reporting violation that is unconnected to any other illegal activity. Kerr testified that he paid income tax, at ordinary rates, on the income received from foreign accounts. (EFC No. 49-4 at 278:22-25, 279:1-2.) The IRS conducted a civil examination of Kerr's income tax liabilities for taxable years 2007 and 2008, specifically focusing on the foreign accounts at issue in this case, and the United States Tax Court entered a stipulated decision determining that Kerr did not underreport his income tax liabilities for taxable years 2007 and 2008, and that he was not liable for a civil fraud penalty under I.R.C. § 6663 for either year. (Ex. 15 at 1-2.) The United States offers zero evidence to refute Kerr's assertion that the government

suffered no tax loss. The declaration of an appeals officer offers nothing to suggest that the government sustained a tax loss. The IRS conducted a years-long civil examination of Kerr's income tax liabilities for 2007 and 2008. If the United States had any evidence of Kerr's tax loss, it should have asserted it.

Kerr's FBAR penalties are fines that are grossly disproportionate to the conduct involved—a mere failure to report—and the punishment is unconstitutional under the Excessive Fines Clause of the Eighth Amendment after weighing the relevant factors and comparing the FBAR penalties to the additional tax due—zero—and considering that the penalties exceed the amounts in the accounts as of June 30, 2009 ($1,362,893). The Court should reduce the FBAR penalties to 50% of the account balances as of June 30, 2009, or $681,446.

## CONCLUSION

Based on the foregoing, this Court should grant Kerr's Motion for Summary Judgment.

RESPECTFULLY SUBMITTED this this 5th day of August, 2021.

/s/ Brandon A. Keim
Brandon A. Keim (028831)
**FRAZER RYAN GOLDBERG & ARNOLD LLP**
1850 N. Central Ave, Suite 1800
Phoenix, AZ 85004
Phone: 602-200-7399; Fax: 602-200-7339
E-mail: bkeim@frgalaw.com

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED that service of the foregoing is made this 5th day of August, 2021, via the Court's ECF system to all counsel of record.

/s/ Brandon A. Keim
BRANDON A. KEIM
*Attorneys for Defendant*