WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>           Plaintiff,<br><br>v.<br><br>Stephen M Kerr,<br><br>           Defendant. | No. CV-19-05432-PHX-DJH<br><br>**ORDER** |

Pending before the Court are cross Motions for Summary Judgment filed by Plaintiff United States of America ("Plaintiff") (Doc. 46) and Defendant Stephen Kerr ("Mr. Kerr") (Doc. 47). The parties have filed their respective Responses and Replies, and the matter is now fully briefed.[1] For the following reasons, the Court will remand most but not all of the penalties to the IRS and enter judgment against Mr. Kerr in the amount of $240,985.

**I.  Background**

A United States person with a foreign bank account worth more than $10,000 must file a yearly Report of Foreign Bank and Financial Accounts ("FBAR") with the Internal Revenue Service ("IRS"). 31 U.S.C. § 5314; 31 C.F.R. §§ 1010.350, 1010.306(c). Willful failure to file an FBAR can result in both civil and criminal penalties. 31 U.S.C. §§ 5321(a)(5)(C), 5322(a). In 2013, Mr. Kerr was criminally convicted for willfully failing

---

[1] Plaintiff filed a Response in opposition to Defendant's Motion (Doc. 48), and Defendant filed a Response opposing Plaintiff's Motion (Doc. 49). The Parties then filed their respective replies (Docs. 51; 52).

to file FBARs in the 2007 and 2008 reporting years. *United States v. Kerr*, 2013 WL 4430917, at *14 (D. Ariz. Aug. 16, 2013) (denying motion for judgment of acquittal or, in the alternative a new trial), *aff'd United States v. Quiel*, 595 F. App'x 692, 694 (9th Cir. 2014). This matter concerns the civil penalties for FBAR violations, which the IRS originally assessed in 2014 (the "Original Assessment"). (Doc. 46-31).

The Original Assessment took into consideration bank records for five different accounts (the "Five Accounts") over the 2007 and 2008 reporting years. Based on the IRS' estimated value of the Five Accounts, the IRS calculated a total civil penalty of $3.8 million against Mr. Kerr. (Doc. 19 at 5–6).

Previously, the parties sought summary judgment from the Court to determine, under the doctrine of collateral estoppel, what preclusive effect Mr. Kerr's prior criminal conviction has on this case. (Doc. 17). The Court held that Mr. Kerr would be estopped from challenging that he willfully failed to file FBARs with respect to all but one of the Five Accounts, as four were referenced in Counts 6 and 7 of the prior criminal Indictment. (Doc. 26 at 5). The one account excluded from this was a Swiss account ending in -734. (*Id.* at 6). The -734 account was used to deposit 100,000 Swiss Francs with the Union Bank of Switzerland AG ("UBS"), which Swiss law required before opening a capital deposit account. For this reason, the parties refer to the -734 account as the "Placeholder Account." (*Id.* at 2).

Plaintiff now seeks summary judgment on whether Mr. Kerr willfully failed to file an FBAR for the Placeholder Account and a judgment against Mr. Kerr to enforce a civil penalty in the amount of $2,225,574 for willful failure to file FBARs for the Five Accounts. (Doc. 46 at 6). This amount is significantly lower than the Original Assessment's penalty of $3.8 million. Plaintiff concedes that it cannot seek the $3.8 million penalty because the IRS erred in calculating this figure. (*Id.* at 6). Therefore, Plaintiff asks the Court to enter judgment on a newly calculated penalty. Mr. Kerr seeks summary judgment remanding the Original Assessment to the IRS for further investigation or explanation. He also seeks summary judgment on the issue of whether he willfully failed to file an FBAR for the

Placeholder account and on the issue of whether the penalties violate the Eighth Amendment's excessive fine clause.

## II.     Legal Standard

A court will grant summary judgment if the movant shows there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  A factual dispute is genuine when a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Here, a court does not weigh evidence to discern the truth of the matter; it only determines whether there is a genuine issue for trial.  *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994).  A fact is material when identified as such by substantive law.  *Anderson*, 477 U.S. at 248.  Only facts that might affect the outcome of a suit under the governing law can preclude an entry of summary judgment.  *Id.*

The moving party bears the initial burden of identifying portions of the record, including pleadings, depositions, answers to interrogatories, admissions, and affidavits, that show there is no genuine factual dispute.  *Celotex*, 477 U.S. at 323.  Once shown, the burden shifts to the non-moving party, which must sufficiently establish the existence of a genuine dispute as to any material fact.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986).  The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255.  But if the non-movant identifies "evidence [that] is merely colorable or is not significantly probative, summary judgment may be granted."  *Id.* at 249–50 (citations omitted).  "A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."  *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), as amended (Apr. 11, 1997).

## III.    Analysis

The Court begins by discussing if there is a genuine dispute of fact as to whether Mr. Kerr willfully failed to file an FBAR for the Placeholder Account.

### a. Willful Failure to File an FBAR for the Placeholder Account

To show a willful failure to file an FBAR, Plaintiff must show (1) Mr. Kerr is a United States person, such as a citizen; (2) that Mr. Kerr had "a financial interest in, or signature or other authority over" the account; (3) that the account's balance exceeded $10,000 during the reporting period; and (4) that the failure to file the FBAR was willful. 31 U.S.C § 5314 (authorizing the Secretary of the Treasury to prescribe rules requiring the disclosures of certain foreign bank accounts); 31 C.F.R. §§ 1010.306, 1010.350; *United States v. Pomerantz*, 2017 WL 2483213, at *5 (W.D. Wash. June 8, 2017). Mr. Kerr admitted in his Answer that he is a United States person and that he willfully failed to file an FBAR in 2007 and 2008. (Doc. 9 at ¶¶ 13, 42). There is also no dispute that the Placeholder Account's value exceeded $10,000. The only element that Mr. Kerr disputes is whether he had an interest or other authority over the Placeholder Account. (Doc. 49 at 13).

### i. Interest or Other Authority

There are several ways by which one may have an interest or other authority over an account. If the account's owner of record or title holder is named as an agent, the principal has an interest. 31 C.F.R. § 1010.350(e)(2)(i). In addition, a person may have "other authority" over an account if that person has the authority "(alone or in conjunction with another) to control the disposition of money, funds or other assets held in a financial account by direct communication (whether in writing or otherwise) to the person with whom the financial account is maintained." 31 C.F.R. § 1010.350(f)(1).

Here, the Placeholder Account was held by Red Rock Investment, AG ("Red Rock") (Docs. 46-29 at 3). The parties agree that Red Rock was a Swiss corporation that Mr. Kerr's lawyer created on his behalf to help facilitate European investment in Mr. Kerr's American businesses. (Docs. 46 at 7; 46-6 at 37; 47 at 3). Plaintiff argues Mr. Kerr exerted control over Red Rock, such that a duty to file an FBAR would arise under §§ 1010.350(e) or (f). This control, Plaintiff argues, was conclusively established in the prior criminal conviction, where Mr. Kerr was found to have the requisite interest or other authority over

another UBS account held in Red Rock's name. (Doc. 46 at 15). Therefore, Plaintiff argues, Mr. Kerr is precluded from challenging that he had an interest or other authority over the Placeholder Account under §§ 1010.350(e) or (f). (*Id.*)

Mr. Kerr, in response, argues that the Court's prior Order held he would not be precluded from challenging this finding. (Doc. 49 at 13–18). But Mr. Kerr misinterprets the Court's prior Order, which held the jury in the prior criminal matter did not necessarily decide "that Mr. Kerr *willfully* failed to file an FBAR" for the Placeholder Account. (Doc. 26 at 6). The Court has not, until now, discussed whether Mr. Kerr was precluded from challenging his interest or authority over accounts held by Red Rock.

### ii. Collateral Estoppel

To apply the doctrine of collateral estoppel on an issue from a criminal trial: "(1) the prior conviction must have been for a serious offense so that the defendant was motivated to fully litigate the charges; (2) there must have been a full and fair trial to prevent convictions of doubtful validity from being used; (3) the issue on which the prior conviction is offered must of necessity have been decided at the criminal trial; and (4) the party against whom the collateral estoppel is asserted was a party or in privity with a party to the prior trial." *United States v. Real Prop. Located at Section 18*, 976 F.2d 515, 518 (9th Cir. 1992) (citing *Ayers v. City of Richmond*, 895 F.2d 1267, 1271 (9th Cir. 1990)). Of note, the third requirement's purpose is to ensure the prior case's factfinder carefully reviewed the issue at stake. *United States v. Weems*, 49 F.3d 528, 532 (9th Cir. 1995).

As discussed in the Court's prior Order, the parties do not dispute the first, second, and fourth elements of the collateral estoppel test. (Doc. 26 at 3) (citing Docs. 19 at 14, 20; 20 at 3)). The question, then, is whether the jury at Mr. Kerr's criminal trial necessarily decided that Mr. Kerr had an interest or other authority over Red Rock's foreign accounts.

There is no genuine dispute that the criminal Indictment alleged Mr. Kerr failed to file an FBAR for a UBS account held by Red Rock. (Doc. 46-8 at 4). This specific allegation was not for the Placeholder Account, but rather for an account ending in -962, one of the Five Accounts. (*Id.*) In order to find Mr. Kerr guilty, the jury was instructed

that Mr. Kerr was to have had "a financial interest in or signature or other authority over" the -962 account.[2] (Doc. 20-2 at 15). The jury found him guilty. (Doc. 46-9 at 3). Therefore, the jury necessarily found that Mr. Kerr had an interest in or other authority over Red Rock sufficient to establish FBAR liability for all accounts held in Red Rock's name. The Court finds there is no genuine dispute that Mr. Kerr had sufficient authority over the Placeholder Account such that that there is no genuine dispute of fact that Mr. Kerr willfully failed to file an FBAR for the Placeholder Account.

### iii. Conclusion

Having found no genuine dispute that Mr. Kerr Willfully failed to file an FBAR for the Placeholder Account and having previously found that Mr. Kerr was precluded from challenging whether he willfully failed to file FBARs for rest of the Five Accounts (Doc. 26 at 5), the Court finds that Mr. Kerr is liable under 31 U.S.C. § 5321(a)(5) for willfully filing to file FBARs for the Five Accounts: the Placeholder Account ending in -734 and the accounts ending in -962, -796, -593, and -531.

### b. Whether the IRS Conducted the Assessment Properly

Having established Mr. Kerr's liability, the next question is what penalty is appropriate. The civil penalty for willfully failing to file an FBAR is based on the value of each account on the day of the FBAR filing deadline. If, on the deadlines, the account balance exceeds $200,000, then the maximum penalty the IRS may assess is half of the account's total balance. 31 U.S.C. § 5321(a)(5)(C)(i) (stating that the penalty is based on "the balance in the account at the time of the violation"). If the balance is less than $200,000, then the maximum penalty the IRS may impose is $100,000. *Id.*

The IRS' Original Assessment covered accounts during the 2007 and 2008 reporting years. The FBAR filing deadline for the 2007 reporting year was June 30, 2008, and the 2008 reporting year's deadline was June 30, 2009. Plaintiff concedes that, based upon the available evidence in the administrative record, the IRS improperly calculated a large

---

[2] The only difference between a civil and criminal claim that a person willfully failed to file an FBAR is the standard for willfulness. *See United States v. Horowitz*, 978 F.3d 80, 86 (4th Cir. 2020). The element of control over the account is, therefore, the same.

- 6 -

portion of the Original Assessment's penalties because they were not based off of the account balances as of the June 30 deadlines. (Doc. 46 at 6, 19).

After reassessing, Plaintiff now seeks a judgment in a reduced amount of $2,225,574 ("Plaintiff's Corrected Assessment"). (*Id.*) Mr. Kerr agrees that the IRS miscalculated the penalties and provides his own corrected figures ("Defendant's Corrected Assessment"). (Doc. 47 at 23). The parties' Corrected Assessments are as follows:

| Account | Reporting Year | Plaintiff's Corrected Assessment | Defendant's Corrected Assessment | Original Assessment |
|---|---|---|---|---|
| -962 | 2007 | $378,117.00 | $277,285.00 | $378,117.00 |
|  | 2008 | $100,000.00 | $100,000.00 | $100,000.00 |
| -796 | 2007 | $467,200.00 | $487,694.00 | $718,085.00 |
|  | 2008 | $100,000.00 | $100,000.00 | $100,000.00 |
| -593 | 2007 | $555,450.00 | $506,150.00 | $1,523,303.00 |
|  | 2008 | $100,000.00 | $485,597.00 | $485,597.00 |
| -531 | 2007 | $438,593.00 | $250,761.00 | $250,761.00 |
|  | 2008 | $45,229.00 | $45,229.00 | $204,122.00 |
| -734 | 2007 | $40,985.00 | $40,985.00 | $40,985.00 |
| Total |  | $2,225,574.00 | $2,293,701.00 | $3,800,970.00 |

(Docs. 46 at 18–19; 47 at 23).[3]

The Court notes that there is no dispute that the IRS correctly calculated the penalties for the Placeholder Account (-734) in the 2007 reporting year, and the -962 and -796 accounts for the 2008 reporting year. (Docs. 46 at 18; 47 at 23). The penalty for the Placeholder account is $40,985. The penalty for the -962 account for 2008 is $100,000. And the penalty for the -796 account for 2008 is $100,000. There is, therefore, no genuine dispute that the IRS correctly assessed $240,985 in penalties in the Original Assessment. The Court will enter judgment in the IRS' favor in this amount.

As to the remaining accounts, the immediate question before the Court is whether it may enter judgment against Mr. Kerr for the penalties proposed in Plaintiff's Corrected Assessment, or whether it should remand the calculation of the penalties to the IRS.

### i.  Standard of Review

Whether the Court should remand the calculation of penalties to the IRS is a

---

[3] The -734 account is the Placeholder Account, which was only assessed for the 2007 reporting year.

question that falls under the Administrative Procedures Act ("APA"). 5 U.S.C. § 702 (establishing presumption of judicial review for agency actions). "The APA sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." *Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992).

Federal agencies must engage in reasoned decision-making. *Allentown Mack Sales & Serv., Inc. v. N.L.R.B.*, 522 U.S. 359, 374 (1998). If an agency's action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" then the reviewing court may set it aside. 5 U.S.C. § 706(2)(A). Judicial review of the action is generally limited to only those materials that were in the record before the agency. *Proietti v. Levi*, 530 F.2d 836, 838 (9th Cir. 1976). In addition, courts do not substitute their judgment for the that of the agency and "assess only whether the decision was 'based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1905, (2020) ("*Regents*") (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)). It is well established that "a court may uphold agency action only on the grounds that the agency invoked when it took the action." *Michigan v. E.P.A.*, 576 U.S. 743, 758 (2015).

If the court finds that the record does not support the agency's action, or if the agency has not considered all relevant factors, "or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also* 5 U.S.C. § 706. Courts will not remand an action when to do so "would be an idle and useless formality." *N.L.R.B. v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969). Remand could be a useless formality when, for example, the administrative record is fully developed or if no further agency expertise would be required for a determination. *Ruiz-Vidal v. Gonzales*, 473 F.3d 1072, 1080 (9th Cir. 2007) *abrogated on other grounds by Kwong v. Holder*, 671 F.3d 872 (9th Cir. 2011); *Varney v. Sec'y of Health & Hum. Servs.*,

1  859 F.2d 1396, 1401 (9th Cir. 1988).

### ii. The Useless Formality Doctrine

Plaintiff argues that because it has presented a Corrected Assessment here, it is unnecessary for the Court to remand this matter to the IRS. As Plaintiff says, "the administrative record provides for only one outcome" and so "remand would be a useless and inappropriate formality and should not be ordered." (Doc. 52 at 7).

For support, Plaintiff cites three Ninth Circuit cases. First, Plaintiff cites *Varney v. Sec'y of Health & Hum. Servs.*, a Social Security appeal case in which the Ninth Circuit adopted the rule that when an administrative law judge fails to articulate why he or she discredits a claimant's symptom testimony, the testimony is accepted as true. 859 F.2d 1396, 1401 (9th Cir. 1988). As applied to the particular facts before it, the court found there were no other issues that needed to be resolved at the administrative level, and it was "clear from the administrative record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited . . . ." *Id.* at 1401. Therefore, the Court remanded the case for the award of benefits.

Second, Plaintiff cites *Sierra Club v. EPA*, where the plaintiff challenged the Environmental Protection Agency's ("EPA") finding that substandard air quality in California's Imperial Valley was due to emissions blown north from Mexico. 346 F.3d 955, 960 (9th Cir. 2003). The Ninth Circuit vacated the EPA's finding because it ran counter to data showing substandard air quality on days when then wind came from the west. *Id.* at 962. Instead of remanding for further administrative purposes, the court found "the record here has been fully developed, and the conclusions that must follow from it are clear" and so the court instructed the EPA to find that the Imperial Valley was a "serious" nonattainment area, which would require the area to adopt stricter pollution controls. *Id.* at 963.

Third, Plaintiff cites *Ruiz-Vidal v. Gonzales*, in which the Department of Homeland Security had ordered the removal of plaintiff, a Mexican national, after finding that he had been convicted of violating a California law for possession of a controlled substance. 473

F.3d at 1075. The removal was predicated on the assumption that the plaintiff had violated the federal Controlled Substances Act, but, the Ninth Circuit noted, the California law punishes individuals for possessing substances that are not listed under the federal Controlled Substances Act. *Id.* at 1076. Because the administrative record did not say what substance the plaintiff had been convicted of possessing, the Ninth Circuit found the agency had failed to prove plaintiff was convicted of possessing a controlled substance as defined in the federal Controlled Substances Act. *Id.* at 1080. And because the record "either supports the finding of removability or it does not" the court found it was not necessary to remand the case as the record did not support the removability finding. *Id.*

These cases stand for the proposition that when a Court finds the record does not support agency action and when remand would yield only one outcome, the Court can enter judgment to achieve that outcome. But this rule does not apply to the current matter for two reasons. The first is that if the Court were to remand the penalty calculation to the IRS, there is more than one possible outcome. By statute, the IRS has the discretion to impose a range of FBAR penalties. *See* 31 U.S.C. § 5321(a)(5)(C)(i) (describing how to calculate the "maximum" penalties). It is not certain how the IRS would exercise this discretion on remand. Consider *United States v. Schwarzbaum*, a case which Plaintiff cites, where the district court found that the IRS miscalculated an FBAR assessment and entered judgment for what it calculated to be the correct assessment. *United States v. Schwarzbaum*, 2020 WL 2526500, at *4 (S.D. Fla. May 18, 2020). On appeal, the Eleventh Circuit reversed the district court's entry of judgment and remanded the matter to the IRS noting that in assessing FBAR penalties, the IRS has the discretion to mitigate the ultimate assessment. *United States v. Schwarzbaum*, 24 F.4th 1355, 1366 (11th Cir. 2022). The court held that "the fact that the IRS *may* reach a different result when it recalculates Schwarzbaum's penalties in accordance with the FBAR civil penalty statute and regulations is enough to justify remand." *Id.*

The Court may even assume, without deciding, that Plaintiff's calculations within

- 10 -

the Corrected Assessment are mostly in order this time,[4] but without an underlying decision at the agency level, the Court would necessarily be using its own judgment in imposing FBAR penalties.  This the Court cannot do.  It is the IRS that should formally exercise its judgment and discretion in the first instance.  *See Regents*, 140 S. Ct. at 1905 (stating a court may not substitute its judgment for that of the agency).

The second difference between this matter and the Ninth Circuit cases discussed above is that in all three cases, the agencies stood by and defended their original action.  Here, Plaintiff has abandoned the Original Assessment, and it asks that the Court, instead, review and approve the Corrected Assessment it provided at the summary judgment stage.  Indeed, with this posture, the Court finds that principles of agency accountability require it to remand part of the Original Assessment to the IRS. .

The Supreme Court has stated several times that one of the APA's main purposes is to foster agency accountability.  *Franklin*, 505 U.S. at 796; *Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 643 (1986) (stating that "the principle of agency accountability" requires that courts may only uphold agency action for the reasons originally given).  Recently, in *Regents*, the Court stated a "basic" rule that an agency "must defend its actions based on the reasons it gave when it acted." 140 S. Ct. at 1909.  That case concerned the Department of Homeland Security's ("DHS") decision to rescind the Deferred Action for Childhood Arrivals program.  The decision was challenged and, before the Court, DHS attempted to argue why its actions had been proper based on arguments that had not been given when DHS made its original decision.  *Id.*

The Court found that DHS' "*post hoc* rationalizations" were not properly before the Court and that a new decision incorporating these reasons would be necessary before

---

[4] For reasons discussed below, the Court will remand the IRS' Original Assessment with respect to the -962 Account for the 2007 Reporting year for further investigation or explanation.

In addition, a review of Mr. Kerr's calculations suggests they would not withstand scrutiny. For example, Mr. Kerr cites to bank records for the proposition that the -593 account's balance on June 30, 2008, was $1,012,300. (Doc. 47-11 at 31). However, the figure noted states the "Final Value" from a period of June 30, 2008, to September 30, 2008. The "Starting Value" and, presumably, the value on June 30, 2008, was $1,110,900.

- 11 -

review. *Id.* Just as Plaintiff argues here, DHS argued that it would be a useless formality to remand the case just to establish new legal arguments. *Id.* But, citing the policy of agency accountability, the *Regents* Court found remand was proper. *Id.* It reiterated that "the Government should turn square corners in dealing with the people." *Id.* (quoting *St. Regis Paper Co. v. United States*, 368 U.S. 208, 229 (1961) (Black, J., dissenting)). The Court also found that permitting agencies "to invoke belated justifications . . . can upset 'the orderly functioning of the process of review,' forcing both litigants and courts to chase a moving target." *Id.* (citation omitted). Instead, parties should have confidence in an agency's original analysis. *Id.*

If remand is not a useless formality when the government raises new legal arguments on appeal, then remand is certainly not a useless formality here, where Plaintiff presents a new penalty for the Court to consider. Plaintiff must defend the IRS' original action and not make a moving target out of the penalties. *See id.* Therefore, for this reason and because there is more than one possible outcome on remand, the Court remands those parts of the Original Assessment that Plaintiff concedes were made in error. These include the penalties assessed on the -593 and -531 accounts for the 2007 and 2008 reporting years, as well as the penalty assessed on the -796 account for the 2007 reporting year.

### iii. The -962 Account for the 2007 Reporting Year

The only remaining penalty to discuss is the penalty assessed on the -962 account during the 2007 reporting year, which the parties dispute. Plaintiff argues that the IRS correctly assessed a penalty of $378,117 when it used a December 31, 2007, balance to estimate the account's June 30, 2008, balance. Unlike the -593, -531, and -796 accounts, Plaintiff argues there really is no evidence in the record showing what the exact June 30 balance was. (Doc. 52 at 10). Therefore, under the Internal Revenue Manual ("IRM"), Plaintiff argues it is proper for the IRS to calculate the penalty using earlier bank statements to create an estimate of the June 30 balance. (*Id.* at 11) (citing IRM § 4.26.16.5.5.3 (06-24-2021)).[5]

---

[5] Plaintiff does not explicitly say which version of the IRM it cites, but the Court infers it is referring to the June 25, 2021, edition because of the website that Plaintiff includes in its

Mr. Kerr argues the record before the IRS demonstrated that the -962 account held several stocks. (Doc. 47-10 at 31–81). He also argues that under the IRM, the IRS should have considered the stocks' value when estimating the June 30 balance. (Doc. 49 at 9) (citing IRM § 4.26.16.3.6 (07-01-2008)). By failing to follow the IRM in considering the stock's changed value, Mr. Kerr argues the IRS acted arbitrarily and capriciously. (Doc. 47 at 14).

A review of the IRM shows the IRS did not follow its direction when calculating the June 30 value of the -962 account. IRM § 4.26.16.5.5.3, which Plaintiff cites to justify the IRS' decision, states that an examiner "should" use the account balance on another date to estimate the account violation date balance.[6] But that is not all. It goes on to say the examiner should also consider "*any* changes made to that account balance to arrive at the estimated violation date balance . . . ." IRM § 4.26.16.5.5.3(8)(c) (06-24-2021) (emphasis added). Likewise, IRM § 4.26.16.3.6, which was in effect during the Original Assessment, states that the IRS should consider the fair market value of stock when assessing an account's value. *See Kimble v. United States*, 141 Fed. Cl. 373, 393 (2018), *aff'd*, 991 F.3d 1238 (Fed. Cir. 2021) (quoting IRM § 4.26.16.3.6 (07-01-2008)). Therefore, even though multiple IRM provisions directed the IRS to consider known changes to the stocks' value, the IRS did not.

The Court notes that this omission can be determined without resorting to information outside the record. *See Proietti*, 530 F.2d at 838 (stating that courts limit review of agency action to only that which was contained in the record). Plaintiff spends much of its briefing discussing why the court should not consider the stocks' value because it is outside the record. (Doc. 48 at 14). But the Court is not considering the stocks' *value*. It is considering the stock's *existence*, which Plaintiff does not dispute is established in the

---

citation. (*See* Doc. 52 at 10).

[6] Mr. Kerr argues this specific IRM section is not relevant because it was established after the Original Assessment. (Doc. 51 at 6). Plaintiff disagrees and argues this provision was in place during the Original Assessment. (Doc. 52 at 11). The Court need not delve into whether the section is anachronistic because, even if not, it does not support Plaintiff's argument.

- 13 -

administrative record.

Plaintiff also spends some time arguing that Mr. Kerr cannot now argue that the IRS's "factfinding procedures" were inadequate because he was able to present his own evidence and appeal the proposed penalty to the IRS. (Doc. 48 at 10). Plaintiff cites *United States v. Gonzales & Gonzales Bonds & Insurance Agency, Inc.* for the proposition that factfinding procedures are adequate and cannot be questioned when a party can present its own argument and evidence to the agency. (*Id.* at 10) (citing 728 F. Supp. 2d 1077, 1085 (N.D. Cal. 2010)). But the nature of Mr. Kerr's argument is not that the IRS' procedures themselves were inadequate. His argument is that the IRS failed to follow their own procedures as directed by the IRM.

To this, Plaintiff argues it does not matter whether the IRS followed the IRM because the IRM is merely a set of guidelines that do not have the force of law. (Doc. 52 at 8). Indeed, it is well established that the IRM is not a codified regulation and does not impose mandatory requirements on the IRS. *See Urb. v. Comm'r*, 964 F.2d 888, 889 (9th Cir. 1992); *Marks v. Comm'r*, 947 F.2d 983, 986 (D.C. Cir. 1991). And yet, when Plaintiff argues why the IRS' calculation of the penalty based on the December account balance alone was not an abuse of discretion, it cites to the IRM for support. (Doc. 52 at 11) (citing IRM § 4.26.16.5.5.3 (06-24-2021)).[7] Therefore, the only justification Plaintiff offers for the IRS' action is based on the IRM. Why the IRS decided to follow some parts of the IRM, but not others, is not explained in the record. Without an explanation, the Court finds that the means by which the IRS calculated the penalty for the -962 Account for the 2007 reporting year were arbitrary. Therefore, the Court will remand this assessment for further investigation or explanation. *Fla. Power & Light Co.*, 470 U.S. at 744.

---

[7] Plaintiff also argues that estimating a June 30 balance with an earlier statement is appropriate because it was done in *United States v. Bussell*, 2015 WL 9957826 (C.D. Cal. Dec. 8, 2015). Although it may have been done this way, whether it was appropriate to do so was not an issue raised or considered. Therefore, *Bussell* does not support the proposition that the IRS does not abuse its discretion when it estimates an account balance with an earlier statement.

- 14 -

### c. Whether the Assessment Violates the Eighth Amendment

Although the Court will only enter judgment on three of the penalties made in the Original Assessment, it will consider Mr. Kerr's argument that the FBAR penalties violate his rights under the Eighth Amendment.[8]  The Eighth Amendment provides that no "excessive fines" shall be imposed.  U.S. Const. amend. VIII.  A punitive forfeiture violation is excessive "if it is grossly disproportional to the gravity of a defendant's offense." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998).  Although no court has expressly held that civil FBAR penalties constitute a fine under the Eighth Amendment, the Court will assume, without deciding, that they are. *See United States v. Bussell*, 699 F. App'x 695, 696 (9th Cir. 2017) (evaluating whether FBAR penalties are "grossly disproportional" to the gravity of the defense under the Eighth Amendment).

Mr. Kerr bears the burden of showing that the civil penalties are grossly disproportional. *See United States v. $132,245.00 in U.S. Currency*, 764 F.3d 1055, 1058 (9th Cir. 2014).  Courts show substantial deference to legislative bodies when reviewing statutorily established penalties. *Bajakajian*, 524 U.S. at 334; *Solem v. Helm*, 463 U.S. 277, 290 (1983).  In *Bajakajian*, the Court considered several factors in determining whether a fine was excessive including the nature of the conduct, the resulting harm, and whether other penalties may be imposed.  524 U.S. at 336–38; *see also United States v. Bussell*, 2015 WL 9957826, at *7 (C.D. Cal. Dec. 8, 2015).  The Ninth Circuit has noted that these *Bajakajain* factors are not "rigid" and so courts are not limited to these considerations. *United States v. Mackby*, 339 F.3d 1013, 1016 (9th Cir. 2003).

Under these factors, Mr. Kerr argues that the penalty is grossly excessive because (1) the only crime he committed was willfully failing to report the accounts, (2) this failure was unconnected to other criminal activity,  (3) that other criminal penalties already exist for this conduct, and (4) that "the government suffered no injury as it stipulated that [Mr.] Kerr did not underreport his tax liabilities."  (Doc. 47 at 25).

---

[8] Because the maximum amount assessed for each of the three penalties is $100,000, the Court need not address Mr. Kerr's argument that the other penalties are invalid because they exceed $100,000.  (*See* Doc. 47 at 24).

The stipulation that Mr. Kerr references is a stipulated decision issued by the United States Tax Court stating that "there are no deficiencies in income tax due from, nor overpayment due to" Mr. Kerr for the taxable years 2007 and 2008. (Doc. 47-15 at 1). Plaintiff avers that when it entered into this stipulation it "only agreed to concede the income tax deficiencies because of a procedural argument [Mr.] Kerr raised concerning the Federal Rules of Evidence." (Doc. 48 at 20–21). The stipulation, Plaintiff argues, does not actually establish that Mr. Kerr accurately reported his tax liabilities because it has no preclusive effect. (*Id.* at 20) (citing *Arizona v. California*, 530 U.S. 392, 415 (2000) (noting that stipulated Tax Court judgments have no preclusive effect unless the court actually reached an adjudication of the merits)); *see also United States v. Int'l Bldg. Co.*, 345 U.S. 502, 506 (1953) ("[U]nless we can say that [the stipulated Tax Court judgments] were an adjudication of the merits, the doctrine of estoppel by judgment would serve an unjust cause: it would become a device by which a decision not shown to be on the merits would forever foreclose inquiry into the merits.").

Mr. Kerr does not dispute that the stipulation cannot be used here to demonstrate that Mr. Kerr underreported his tax liabilities. Instead, he argues that Plaintiff "offers zero evidence to refute Kerr's assertion that the government suffered no tax loss." (Doc. 51 at 10–11). However, it is Mr. Kerr, not Plaintiff who bears the burden of showing the FBAR penalties are grossly excessive, and so it is Mr. Kerr who carries the burden of showing that the government has not suffered a tax loss. *See $132,245.00 in U.S. Currency*, 764 F.3d at 1058. Therefore, the Court finds that Mr. Kerr has not demonstrated that Plaintiff did not suffer a tax loss. *See Int'l Bldg. Co.* 345 U.S. at 506 ("A judgment entered with the consent of the parties may involve a determination of questions of fact and law by the court. But unless a showing is made that that was the case, the judgment has no greater dignity, so far as collateral estoppel is concerned, than any judgment entered only as a compromise of the parties.").

In total, given the presumption that a statutory penalty is not excessive, and given that Mr. Kerr has not shown that Plaintiff did not suffer any loss in tax revenue as a result

of his actions, the Court finds that Mr. Kerr fails to demonstrate that the FBAR penalties are grossly disproportional to his conduct. *See United States v. Bussell*, 699 F. App'x 695, 696 (9th Cir. 2017) (holding that an FBAR assessment was not grossly disproportionate because defendant "defrauded the government and reduced public revenues").

**IV.    Conclusion**

In sum, the Court finds there is no genuine dispute of material fact that Mr. Kerr willfully failed to file an FBAR for the Placeholder Account.  The Court remands the majority of the penalties assessed by the IRS for further investigation or explanation, with the exception of the penalties assessed for the Placeholder Account (-734) in the 2007 reporting year, and the -962 and -796 accounts for the 2008 reporting year.  In accordance with the Original Assessment, the Court will enter judgment against Mr. Kerr for willfully failing to file FBARs for these accounts in the amount of $240,985.  This judgment, the Court finds, is not unconstitutionally excessive.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 46) is **granted** in part and **denied** in part.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. 47) is **granted** in part and **denied** in part.

**IT IS FURTHER ORDERED** the Clerk of Court shall take all necessary steps to remand to the IRS for further investigation or explanation the following assessments of the following penalty assessments;

- The -962 account for the 2007 reporting year,
- The -796 account for the 2007 reporting year,
- The -593 account for the 2007 and 2008 reporting years, and
- The -531 account for the 2007 and 2008 reporting years.

**IT IS FINALLY ORDERED** that the Clerk of Court shall enter judgment against Defendant in the total amount of $240,985 for willfully failing to file FBARS for the following:

- $100,000 for the -962 account for the 2008 reporting year,
- $100,000 for the -796 account for the 2008 reporting year, and
- $40,985 for the -734 account for the 2007 reporting year.

**IT IS FINALLY ORDERED** that there being nothing further, the Clerk of Court shall terminate this matter.

Dated this 28th day of March, 2022.

Honorable Diane J. Humetewa
United States District Judge