**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>     Plaintiff,<br><br>v.<br><br>Stephen M Kerr,<br><br>     Defendant. | No. CV-19-05432-PHX-DJH<br><br>**ORDER** |

Before the Court is Plaintiff United States of America's ("Plaintiff") Motion to Reopen Case and for Entry of Final Judgment after Remand. (Doc. 80). Stephen M. Kerr ("Defendant") has filed an Opposition brief (Doc. 84), and Plaintiff has filed a Reply (Doc. 85). For the reasons set out below, the Court grants the Plaintiff's Motion to Reopen Case and for Entry of Final Judgment after Remand.

**I.     Background**

Plaintiff filed a Complaint on October 18, 2019 (Doc. 1) against Defendant for the collection of outstanding unpaid civil penalty assessments for his failure to report foreign bank accounts. (Doc. 1 at 2). These unpaid civil penalty assessments are also known as FBAR penalties. The term FBAR comes from the name of the report that is required to be filed with the IRS to report foreign interest in bank accounts: the "Report of Foreign Bank and Financial Accounts," or TD F 90-22.1 form. (*Id.*) Under 31 U.S.C. § 5314, the Secretary of Treasury is authorized to require individuals to report foreign bank accounts or other financial interest in a foreign country to the Internal Revenue Service ("I.R.S.").

*See* 31 C.F.R. 1010.350(a). Failure to comply with this requirement can result in civil penalties. 31 U.S.C. § 5314. Defendant had a financial interest in four foreign bank accounts at the Union Bank of Switzerland ("UBS") and a financial interest in one foreign bank account at Pictet & Cie ("Pictet") during 2007 and 2008. (Doc. 1 at 3). To minimize his tax liabilities in the United States, Defendant, through the help and advice of his attorney, set up nominee corporations and nominee directors that would function as record owners of the accounts while Defendant himself would be the true beneficiary. (Doc. 1 at 5). Defendant was advised by his attorney, however, that even with nominee directors and nominee corporations, the Defendant had a legal obligation to report income from these accounts to the I.R.S. (*Id.*) Despite this advice, Defendant failed to report the income from these accounts on his and his wife's Individual Income Tax Return (Form 1040). (Doc. 1 at 8). On the Form 1040's Schedule B, Interest and Ordinary Dividends section, Defendant stated that he had no control of a foreign account. (*Id.*) Defendant also never filed any FBARs for 2007 or 2008 to report his interest in the foreign accounts. (*Id.*)

On December 8, 2011, Defendant was indicted by a federal grand jury for Willful Subscription to False Individual Income Tax Return for the 2007 and 2008 years and Willful Failure to File FBARs for 2007 and 2008. (Doc. 1 at 9). The United States Court of Appeals for the Ninth Circuit affirmed Defendant's convictions on December 19, 2014. (*Id.*) On October 18, 2019, Plaintiff brought a claim for relief for the judgment of civil penalties to this Court. (Doc. 1 at 9). The action was based on civil penalties assessed by the I.R.S. for the 2007 and 2008 years and for late-penalty payments, interest, and collection related fees. (Doc. 1 at 10). Plaintiff sought to have the Court enter judgment in its favor for $4,281,350.12, plus any statutory accrual fees it was owed. (Doc. 1 at 10). After the parties' full briefing on the issue this Court entered judgement against the Defendant for $240,985 and remanded the case back to the I.R.S. after Plaintiff conceded that some of its penalty calculations were made in error. (Doc. 55 at 17). Plaintiff filed a Motion for Reconsideration on April 25, 2022, to remand the

entire penalty amount back to the I.R.S. (Doc. 62). This Court denied Plaintiff's request in part, reasoning that the penalties were severable and not intertwined, and granted it in part, because the earlier judgment should have acknowledged that Plaintiff was entitled to collect late penalties and related fees. (*Id.*)

Plaintiff then appealed the case to the Ninth Circuit Court of Appeals on May 30, 2023. (Doc. 66). While pending appeal, Plaintiff filed a Motion for Entry of Final Judgment after Remand. (Doc. 68). That Motion asked the Court to clarify that the (1) remanded FBAR penalties were not vacated; (2) that the Court would grant Plaintiff's request to reopen the case; and (3) that the Court would defer consideration of Plaintiff's request for judgment on the six remaining penalties. (Doc. 76). This Court confirmed that it did not vacate the six remaining FBAR penalties. (Doc. 76 at 6). It also confirmed that a remand back to an agency is not final and that the Court would reopen the case so that Plaintiff can have a final judgment against the Defendant on the recalculated penalties. (Doc. 76 at 9). Lastly, the Court stated that it would defer final judgment on the six remaining remanded penalties in its February 23, 2024, Order because the request raised a substantial issue under Fed. R. Civ. P. 62.1(a)(3). (Doc. 76 at 10). The Court deferred final judgment on the six remaining penalties on remand because the Defendant contended that he did not have the benefit of discovery for the I.R.S.'s recalculation of penalties. (Doc. 76 at 10).

Plaintiff's latest Motion to Reopen the case and for Final Judgment, raises many of the same issues raised its Motion for Entry of Final Judgment after Remand. (Doc. 80). This time, Plaintiff asks the Court to reopen the case and enter a final judgment that incorporates the partial judgment the Court previously entered against the Defendant, noting that the amount of the partial judgment has been fully paid. (Doc. 80 at 2). Plaintiff also asks for a final judgment on the recalculated penalties in the amount of $2,660,749.06. (Doc. 80). Defendant has filed a Response in opposition to Plaintiff's Motion (Doc. 84) and Plaintiff has filed a Reply. (Doc. 85). For the reasons set forth below, the Court will grant Plaintiff's Motion to Reopen Case and Entry of Final

Judgment after Remand.

## II.     Analysis

Based on the Court's review of the recalculation submitted by the I.R.S., and for the reasons discussed below, the Court finds that reopening of this case is proper. This will allow the Court to enter final judgment and incorporate the partial judgment ordered by the Court on April 15, 2023. (Doc. 65). Further discovery is also not warranted because the I.R.S. has properly designated the record. And, as a final point, the Court finds that the I.R.S. recalculation of penalties was done properly and was not arbitrary or capricious. The Court will lay out its reasoning below.

**A.     The Court's Order to Remand the six remaining penalties was not a vacatur or final adjudication on the merits and the case will be reopened.**

To start with, the Court will grant Plaintiff's request to reopen the case, as it stated it would in its previous Order. (Doc. 76 at 8). Plaintiff seeks to reopen the case so that it may obtain clarification from the Court regarding the Court's remand to the I.R.S. of the six remaining penalties and so that final judgment can be issued. (Doc. 80 at 5). Specifically, Plaintiff would like the Court to reiterate that the six FBAR penalties that were remanded did not represent a vacatur of those penalties. (*Id.*) Conversely, Defendant argues that the remanded penalties represented a vacatur. (Doc. 84 at 10).

Generally, remand orders are not considered final. *Chugach Alaska Corp. v. Lujan*, 915 F.2d 454, 457 (9th Cir. 1990) (citing *Eluska v. Andrus*, 587 F.2d 996, 999–1001 (9th Cir. 1978)). Only in limited circumstances is an order remanding a matter back to an agency considered final, such as when (1) the district court conclusively resolves a separable legal issue, (2) the remand order forces the agency to apply a potentially erroneous rule which may result in a wasted proceeding, or (3) review would, as a practical matter, be foreclosed if an immediate appeal were unavailable. *Id.*

Here, none of the recognized three exceptions apply to the remanded penalties. The Court made that clear in its earlier Order. (Doc. 76 at 6). The Court stated: "To start, nowhere in its Prior Orders did the Court vacate the Six Remaining Penalties. The

Court found that Mr. Kerr is liable for all nine FBAR penalties issued against him by the IRS (Doc. 55 at 4–6, 15–17); entered partial judgment on three of the nine penalties (Docs. 55 at 17–18; 64); remanded six of the nine penalties for the IRS's further investigation and explanation (Docs. 55 at 6–14; 62 at 7–13 (affirming on reconsideration)); and terminated the case on the basis that there was "nothing further" to review pending remand. (Docs. 55 at 18; 64 at 3)." (Doc. 76 at 6). The Court's review at the time of Plaintiff's original Motion for Entry of Final Judgment (Doc. 68), found that there was nothing for the Court to review because the U.S.'s appeal was pending before the Ninth Circuit. (Doc. 76 at 4–5). The Court's position has not since changed. The remand back to the I.R.S. to recalculate the six remaining penalties did not result in vacatur and now that the penalties have been recalculated, the case is reopened so that final judgment can be entered.

### B.  The Court will not allow discovery to be reopened and denies Defendant's 56(d) discovery request.

In its prior Order, the Court also stated that it would not take a final disposition on the remanded penalties because the issue of final judgment "calls for a further examination on a more fully developed record." (Doc. 76 at 10). The Court specifically cited to Rule 62.1 and stated that the request for a final judgment required the Court to look at evidence that was not before the Court; namely, the recalculation of penalties. (*Id.*) Now, however, post-remand, the Court can examine the fuller record and grant a final judgment to Plaintiff. Following the remand, Defendant renews his request for a Rule 56(d) discovery request on the recalculated penalties. (Doc. 84 at 4).

Under the Administrative Procedure Act ("APA"), judicial review of an agency action is limited to a review of the administrative record. *Friends of the Earth v. Hintz*, 800 F.2d 822, 828 (9th Cir. 1986). The Court is presented with the task of reviewing the agency decision based on the record the agency presents to the Court. *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). The emphasis in this review is the record already in existence, not a new record made in the reviewing court. *Id.* Ninth Circuit

precedent holds that, "[t]he 'whole' administrative record . . . consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (citation and internal quotation marks omitted) (emphasis removed). Accordingly, an agency's designation of the administrative record is entitled to a presumption of regularity, and its certification is deemed sufficient to show that the record is complete. *McCrary v. Gutierrez*, 495 F. Supp. 2d 1038, 1041 (N.D. Cal. 2007) (citations omitted). Because a court's review of an agency decision under the APA is limited to the administrative record, discovery generally is not permitted in such cases. *McCrary*, 495 F. Supp. 2d at 1041. However, certain rare circumstances may justify permitting discovery or expanding judicial review beyond the administrative record. *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir. 1988) amended, 867 F.2d 1244 (9th Cir. 1989). The Ninth Circuit has articulated four such exceptions. Courts may permit discovery or review extra-record material only when "(1) it is necessary to determine whether the agency has considered all relevant factors and explained its decision, (2) the agency has relied on documents not in the record, (3) supplementing the record is necessary to explain technical terms or complex subject matter, or (4) plaintiffs make a showing of bad faith." *City of Las Vegas, Nev. v. F.A.A.*, 570 F.3d 1109, 1116 (9th Cir. 2009). "[T]hese exceptions are narrowly construed and applied." *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005).

Because there is a presumption that the I.R.S. has properly designated the record, the burden is on the Defendant to show that one or more of the exceptions above applies. He has not met this burden. Nor has Defendant explained what discovery would now accomplish. Defendant states that Plaintiff did not provide him access to the IRM. (Doc. 84 at 4). However, as Plaintiff correctly points out, the IRM is a document that is publicly available on the IRS website. (Doc. 85 at 4). Defendant also says Exhibit 1[1] was not previously provided to him during the discovery phase of this case. (Doc. 84 at

---

[1] Exhibit 1 is the Plaintiff's explanation of its recalculated penalties. (Doc. 68-1).

2).  He also asserts that Plaintiff's inclusion of Exhibit 1 violates this Court's Rule 16 Scheduling Order, which required fact discovery to be completed by a certain date.  (*Id.*)  This argument lacks merit.  Plaintiff could not have attached a post-remand document during the initial phases of discovery because the Court had yet to decide the case needed to be sent back to the I.R.S.  The Defendant also makes an argument that internal emails between I.R.S. personnel should be disclosed to him because they inform the entirety of the record.  (Doc. 84 at 3).  Not so.  These documents are rightly designated as deliberative documents, and Defendant is not entitled to deliberative documents in a post-remand proceeding.  *See Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1118–19 (9th Cir. 1988) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)) (deliberative documents that expose the internal consultation processes of the agency should be shielded from exposure)).

Defendant has not overcome his burden in explaining why the I.R.S. has not properly designated the record.  Because Defendant has provided nothing to overcome the presumption that the I.R.S. properly designated the record and has equally failed to make clear which exception applies to allowing discovery, the Court will not allow discovery to be re-opened.

    **C.**    **The recalculation of penalties on remand was not arbitrary or capricious**

In its March 29, 2022, Order, the Court took issue with two things when examining Account -796 (for the 2007 reporting year), Account -593 (for the 2007 and 2008 reporting years), and Account -531 (for the 2007 and 2008 reporting years). (Doc. 55 at 12–14).  First, the Court found that with regard to all three accounts, the penalty calculation was not based on June 30 account balances as required by the Internal Revenue Manual.  IRM 4.26. 16.3.6.  (*Id.*)  Second, the Court found that for the -962 account, the I.R.S. did not consider the value of stocks held in the account when estimating the June 30th balance.  (*Id.*) The June 30th date is pertinent because the I.R.S.'s Internal Revenue Manual mandates that the FBAR penalty for a given year be

calculated based on June 30th of the following year.  IRM 4.26.16.5.2(2)(a).  Plaintiff has not submitted any new evidence in support of its Motion to Reopen the Case.  It does however, incorporate by reference, Exhibit 1 to its original Motion to Reopen Case. (Doc. 68-1).[2]

The section of the IRM that corresponds to FBAR calculations is 4.26.  *See* Internal Revenue Manual, 4.26. To begin with, the I.R.S. examiner should consider all accounts and years at issue.  IRM 4.26.16.5.5.3.  Although I.R.S. agents are given discretion in determining the amount of FBAR penalties, they cannot impose an amount greater than the statutory maximum.  IRM 4.26.16.5.2.1; 31 U.S.C. § 5321 (a)(5)(C). The I.R.S. can also apply mitigation factors, if it deems that any of those factors have bearing.  IRM 4.26.16-2.  In reviewing assessments of penalties pursuant to the APA, which is the applicable mechanism to consider FBAR penalties, courts will "set aside an agency's penalty selection only if it was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Kimble v. United States*, 991 F.3d 1238, 1242 (Fed. Cir. 2021).  While the scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency, the agency nevertheless must examine the relevant data and articulate a satisfactory explanation for its action.  In reviewing that explanation, a court must consider whether the decision was based on a consideration of the relevant factors and whether there was a clear error of judgment.' " *Jones v. United States*, No. CV 19-04950 JVS (RAOx), 2020 WL 2803353, at *8 (C.D. Cal. May 11, 2020) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 30–31(1983)).

This time, when recalculating all the remanded penalties, the I.R.S. properly followed IRM procedures.  To begin with, the I.R.S. properly determined the statutory maximum FBAR penalty for each account based on 31 U.S.C. § 5321 (a)(5).  Section 5321(a)(5) calls for a penalty to be calculated that is the greater of either $100,000 or 50

---

[2] The Court also takes judicial notice of the Internal Revenue Manual used to recalculate the new penalties. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688–689 (9th Cir. 2001) (a court may take judicial notice if the authenticity of the document is not contested, and it is necessarily relied upon in the complaint).

percent of the balance in the account at the time of the violation. For accounts -962, -796, and -531, the accounts statements were not available for June 30, 2008, or June 30, 2009, so the balances of those accounts were estimated using account statements as of December 31, 2007, and December 31, 2008. (Doc. 68-1 at 3). This tracks the proper IRM protocol to use available information, including the balance in the account on a date other than June 30th. IRM 4.26.16.5.5.3 (8). In recalculating the penalty for the -962 account, the I.R.S. looked at the historical share prices as of June 30, 2008, and June 30, 2009. (Doc. 68-1 at 3). An estimated stock valuation was calculated based on closing share prices on June 30, 2008, and June 30, 2009. (Doc. 68-1 at 5). The recalculation of penalties results in the following, which the Court finds is the proper FBAR penalty for each account:

| Account | Year | FBAR penalty |
| --- | --- | --- |
| UBS - 962 | 2007 | $248, 373 |
| UBS - 796 | 2007 | $467, 200 |
| UBS - 593 | 2007 | $555,450 |
| Pictet & Cie - 531 | 2007 | $438.593 |
| UBS - 962 | 2008 | $100,000 |
| Pictet & Cie - 531 | 2008 | $100,000 |
| Total | | **$1,909,616** |

Therefore, the Court finds that the recalculation was not arbitrary or capricious and instead, follows internal I.R.S. guidelines.

**C.    Defendant owes the I.R.S. statutory interest and collection fees**

Plaintiff also asks the Court to find that the Defendant owes mandatory pre-judgment interest under 31 U.S.C. 3717(a), late payment penalties under 31 U.S.C. § 3717 (e)(2), and other collection related fees under 31 U.S.C. § 3717(e)(1). (Doc. 80 at 11). Defendant disputes that he owes statutory interest and collection fees.

- 9 -

(Doc. 84 at 13). Mainly, his arguments are tethered to the premise that these late fees and penalties are entirely new assessments by the I.R.S. (*Id.*) The Court has made clear on multiple occasions that this is not the case. Recalculations are not new assessments.

Awards of pre-judgment interest are governed by considerations of fairness and are awarded when it is necessary to make the wronged party whole." *United States v. California State Board of Equalization*, 650 F.2d 1127, 1132 (9th Cir.1981), *aff'd mem.*, 456 U.S. 901, 102 (1982). It is clear, however, that this general rule may be trumped by the command of a federal statute. *See Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 676 F.2d 1291, 1310 (9th Cir.). Costs of the loss of use of a money judgment should not be borne by the injured plaintiff, but by the "defendant whose initial wrongful conduct invoked the judicial process and who has had the use of the money judgment throughout the period of delay." *Perkins v. Standard Oil Co.*, 487 F.2d 672, 676 (9th Cir. 1973).

Here, the governing federal statute is 31 U.S.C. § 3717(a). This statute allows the federal government to collect interest at the rate of 1% annually from the date notice is mailed to the person owing the debt. 31 U.S.C. §§ 3717(a)(1), (b)(2). As of August 4, 2023, interest on the remanded willful FBAR penalties has accrued to $107,304.72, but it will also continue to accrue until judgment is entered by the Court. Plaintiff is also owed a late-payment penalty because the Defendant did not make any payments to the I.R.S. within the 90-day period as outlined by section 3717 (e)(2). Section 3717 (e)(2) sets the penalty at 6% a year on the portion of the unpaid debt after 90 days. Based on the original debt, the amount of late-payment penalties snow owed by the Defendant is $643,828.34.

In accord with section 3717 (e)(2), the Court will enter pre-judgment interest, late payment penalties, and other collection related fees in favor of the United States.

**D.** **Defendant's other arguments against a final judgment do not have merit.**

Defendant renews many of his previously raised arguments against final judgment.

Defendant states that he has not had the opportunity to raise an Eighth Amendment Excessive Fines Clause against the new penalties assessed by the I.R.S. (Doc. 84 at 8). He also maintains that the recalculation of the six remaining penalties is actually an assessment and requires that the I.R.S. abide by the statutory requirements as set forth in 31 U.S.C. § 5321 (a)(5)(C) and 31 U.S.C. § 3717(b)(2). (*Id.*) These requirements would involve the following steps: (1) calculate the penalty in accordance with section 5321 (a)(5)(C); (2) assess the penalty within a six-year period in accordance with section 5321(b)(1); (3) give notice "of the amount due" in accordance with section 3717(b)(2) and if necessary; (4) file suit. (*Id.*) Hinging on his argument that these recalculations are simply reassessments and that the I.R.S. has violated procedural guidelines, is his argument that he does not owe interest or late payment penalties, or collection-related fees because the I.R.S. did not provide him "with notice of the amount due." (Doc. 84 at 13, 14). He also posits two other related arguments. First, he argues that the recalculation did not have FBAR Counsel Review and second, that there were no required sections[3] in Exhibit 1 (the supplement to the original Form 886-A). (*Id.*) Defendant is wrong, and the Court will address each argument in turn.

First, the Court made clear in its March 29, 2022, Order that the assessments did not violate the Eight Amendment. (Doc. 55 at 15). Defendant failed to meet his burden in proving that the FBAR penalty assessments were excessive, and he failed to rebut the presumption that statutory penalties are not excessive to begin with. (Doc. 55 at 16). Second, on a remand for a recalculation, the I.R.S. is not reassessing anything. The IRS is simply performing a recalculation. So, the clock does not start again on the process cited by Defendant in assessing penalties in the initial phases of the I.R.S.'s examination. *See* 31 U.S.C. 5321 (a)(5)(C) (how Civil FBAR penalties are assessed after a violation is

---

[3] The "sections" that Defendant refers to are more properly called headings. These headings are usually included in the penalty assessment documents, such as a Form 886-A provided by the I.R.S. when the agency first assesses its penalties. IRM 4.26.17. Although the I.R.S. did provide Defendant with the required headings in its original assessment (Doc. 46-31 at 16), it is certainly not required to do so now on a recalculation. Nor has Defendant cited to any applicable authority that references this section of the IRM with a recalculation.

found); 31 U.S.C. 3717(b)(2) (requiring IRS to provide the violator with notice of the amount due). Defendant's arguments that the statute of limitations for a civil action has expired lacks merit given that the recalculations are not subject to the same rules as assessments. The same can be said regarding Defendant's argument that the recalculation lacked FBAR Review Counsel. The section of the IRM that Defendant cites applies to new assessments, not to recalculations of penalties. *See* IRM 4.26.17.4. Defendant's last point regarding the required sections is not entirely well-taken either, much for the same reasons as his other arguments. Because the I.R.S. performed a recalculation and not a reassessment, the sections Plaintiff cites, do not apply. *See* IRM 4.26.17.4(2)(a).

Because the Court does not find merit in any of Defendant's arguments above, the Court will be ordering a final judgment in favor of the I.R.S. that incorporates the partial judgment previously entered by the Court. Accordingly,

**IT IS ORDERED** that the Judgment in a Civil Case previously entered in this action on April 15, 2023 (Doc. 65) is hereby fully incorporated by reference into this Judgment and that Defendant Stephen M. Kerr has fully paid the amount of that judgment and any accruals associated with it.

**IT IS FURTHER ORDERED** that the Clerk shall enter Judgment in favor of the Plaintiff and against Defendant Stephen Kerr, after remand for willfully failing to file FBARs for the following:

| Account | Year | FBAR penalty |
| --- | --- | --- |
| UBS - 962 | 2007 | $248, 373 |
| UBS - 796 | 2007 | $467, 200 |
| UBS - 593 | 2007 | $555,450 |
| Pictet & Cie - 531 | 2007 | $438.593 |
| UBS - 962 | 2008 | $100,000 |
| Pictet & Cie - 531 | 2008 | $100,000 |
| **Total** |  | **$1,909,616** |

**IT IS FURTHER ORDERED** that in addition to these willful FBAR penalty amounts, the Defendant also owes pre-judgment interest under the following statutes and in the following amounts:

- Under 31 U.S.C. § 3717(a) totaling $107,304.72;
- Under 31 U.S.C. § 3717(e)(2) for failure to pay totaling $634,828.34, for a total amount due of $2,660,749.06, calculated as of August 4, 2023;
- Under 31 U.S.C. § 3717(a) for additional pre-judgment interest through the date (March 6, 2025) that judgment relating to these willful FBAR penalty amounts is entered;
- Under 29 U.S.C. § 1961 for post-judgment interest from the date judgment relating to these willful FBAR penalty is paid in full;
- Defendant further owes a continuing failure to pay penalty under 31 U.S.C. § 3717(e)(2) accruing after August 4, 2023, and until the judgment relating to these willful FBAR penalty amounts are paid in full;
- Under 31 U.S.C. § 3717(e)(1), for potential other collection fees accruing after August 4, 2023, until the judgment relating to these willful FBAR penalty amounts are paid in full.

Dated this 6th day of March, 2025.

_____
Honorable Diane J. Humetewa
United States District Judge